No. 84.—In the matter of John S. Stephens, former Sheriff of Baldwin.

A sheriff is liable to be attached for the failure of his deputy to pay over money collected on an execution by him.

Kenan and Rockwell, for the late sheriff.

Mr. Rockwell's Argument.

The liberty of the citizen cannot be abridged or taken away without authority of law; and the provisions of that law ought to be clear and unquestionable.

It is proposed, in the discussion of the question presented by this record, to inquire into the power of the superior courts of Georgia to punish sheriffs by attachment—in what cases they are so punishable—and how that punishment is to be carried into effect.

1st. There is no other statute bearing directly on this question, except the 50th and 52d sections of the Judiciary Act of 1799. From these enactments of the Legislature, the power is unquestionably derived.

The 50th section of the act provides, " that the sheriff shall be liable either to an action on the case, or to an attachment for contempt of court, at the option of the party, whenever it shall appear he hath injured such party, either by false returns, or by neglecting to arrest the defendant, or to levy on his property, or to pay over to the plaintiff or his attorney the amount of any sales which shall be made under or by virtue of any execution, or any money collected by virtue thereof."—Prin Dig. 431.

The mode of proceeding by attachment, however, is not pointed out by law; and the presumption is, that the proceeding was to be such as was known to the courts of England, from whose practice this proceeding was adopted.

Previous to the enactment of the Judiciary Act, if the practice obtained at all in this State, it must have been governed by the rules of the English courts; and by those rules sheriffs were punishable by attachment for constructive contempt in two cases only ; first, for not returning the writ of capias ad respondendum ; second, for not bringing in the body of the defendant. In all other cases, parties injured by misfeasance or nonfeasance of the sheriff, were left to their actions in the proper courts for redress.

If the plaintiff be dissatisfied with the bail taken by the sheriff, he should rule him to return the writ.—1 Tidd's Prac. 253. It is not usual for sheriffs to return the writs, unless ruled for that purpose.—Watson on Sheriffs, 63. If there be no return of any of the matters which by law the sheriff is authorized to return, after being ruled for that purpose, it is a contempt, for which the court, on a proper

*affidavit* will grant an attachment.—1 *Tidd's Prac.* 254. If he returns " *cepi corpus,*" he is then ruled to bring in the body.

The object of this proceeding is to fix the sheriff with a liability to pay the debt and costs.—3 *Chit. Prac.* 391. This object is attained in Georgia under the provisions of the Judiciary Act, by another mode.

This method of proceeding is based upon the supposition that the sheriff, by his officers, may readily ascertain the solvency of the sureties, and he may always resort to them for indemnification; and that if he were not absolutely liable for the defendant's putting in sufficient bail, or for the defendant's rendering himself shortly after the arrest, there would be great facilities of collusion between the officers and the defendant, who, unless the sheriff were absolutely liable, would, for a trifling *douceur*, be induced to take any description of bail, though secretly known by them to be in insolvent circumstances.—3 *Chit. Prac.* 390. Under this proceeding the sheriff is made liable for the debt really due.—7 *Term R.* 370; 8 *ib.* 29; 1 *H. Bl. R.* 233; 9 *East R.* 316. The sheriff is not *imprisoned*, however, on failure to pay the debt forthwith. A rule *nisi* is frequently obtained to stay the proceedings or to set aside the attachment, and is granted absolutely sometimes, on payment of costs, as where bail has been put in and perfected, though not in due time; sometimes conditionally, to let in a trial on the merits, when the attachment is ordered to stand as a security.

In all these proceedings it makes no difference whether the process be in the hands of the high-sheriff, the under-sheriff, or bailiff, except in cases where the defendant resides within a liberty, when the bailiff is liable to the rule and subsequent proceedings, but is only amerced.—1 *Tidd Prac.* 257.

This mode of proceeding is altogether abolished by the provisions of the Judiciary Act of 1799, sec. 14.—*Prin. Dig.* 423.

*Imprisonment,* then, it seems, was not a necessary consequence of an attachment against the sheriff.

The 50th section of the Judiciary Act determines the cases in which the party injured may apply for an attachment against the sheriff; but it is silent as to the imprisonment of the sheriff. It is fair to presume that in adopting this remedy, the Legislature meant to adopt the rules which governed the courts of England in its application and enforcement.

It certainly seems reasonable, that in the Court of King's Bench, when an attachment is obtained against the sheriff for not returning the writ, or bringing in the body, that it should be set aside *to let in a trial on the merits.* The existence of the debt was a *fact* to be ascertained in the only mode known to the English courts—*a trial by jury.* The same reason applies with equal force in case of an attachment against the sheriff, under our law, for not paying over money collected by virtue of an execution. The whole sum apparently due on the execution may not be due, and the amount due becomes a fact to be ascertained.

Upon a failure to pay over money collected on a *fi fa.*, the English practice afforded a proceeding of another description.

It is the duty of a sheriff to pay over the amount of the levy to the plaintiff, and after a return to a writ of *fi. fa.*, that the money is levied, the sheriff is liable to an action for it, without any demand of payment.—*Sewell's Law of Sheriffs,* 255; 3 *Campb.* 347. There is no instance to be found in any of the English books, of a rule and attachment against the sheriff for not paying over the money levied under a " *fieri facias.*"

" If the sheriff return ' *fieri feci,*' (says *Watson,* p. 202,) the plaintiff may proceed for the money against the sheriff by action of debt, founded on the return, (citing *Cro. Car.* 539; *Hob.* 206; 2 *Saund.* 334;) or by action for money had and received, (citing 3 *Camp.* 347; 1 *Stark.* 345;) or by the rule of ' court'—for which last he cites no authority, and indeed does not in the whole chapter allude to it again.

Previous to our judiciary acts, it seems, if the process of attachments against sheriffs was used in Georgia, it was governed by the rules of practice known to the English courts; and no such proceeding was warranted by law against a

sheriff for not paying over money raised on a *fi. fa.* The 50th section of the Judiciary Act of 1799 gave this remedy to plaintiffs against sheriffs for a default in the payment of money collected by them.

This, in its terms, is confined to the default of the sheriff himself. If the attachment is a criminal proceeding, then is this a penal law, and should not be strained, in its construction, to embrace matters not within its provisions.

Another provision seems to be necessary to *imprison* the sheriff, although by the previous enactments he was liable to attachment for contempt. This is accordingly found in the 52d section of the same law : " Whenever the sheriff of any county within this State shall fail to make proper returns of all writs, executions and other process put into his hands, or shall fail or neglect to pay up all moneys received on such executions when he shall be required to do so, he shall be liable to an action for contempt, and may be fined, imprisoned or removed from office, in the manner prescribed by the Constitution.—*Prin. Dig.* 432.

This, though not very intelligible, may be deemed as giving authority to imprison by attachment after a failure to pay over the money due on a *fi. fa.*, according to the requirement of a rule absolute. This, however, is confined to such executions as may be put in the *sheriff's* hands.

The Legislature seemed to be aware of the difficulty and injustice of punishing criminally sheriffs, for defaults of their deputies, and accordingly, in 1841, rendered the deputies liable to rule and attachment.—*Cobb's Anal.* 123.

The court below decided that the sheriff was not criminally liable for the acts of his deputy, but nevertheless ordered an attachment to issue against him.

The attachment alluded to in the English practice for not returning the writ, or bringing in the body, is a criminal process.—1 *Tidd's Prac.* 261 ; *Watson on Sheriffs*, 121 ; 4 *McCord R.* 237.

The attachment is issued in the name of the State, people, or the King, as criminal processes are usually entitled.—5 *John. R.* 235 ; 9 *ib.* 160 ; 3 *Term R.* 133 ; 7 *Term R.* 439, 528 ; 2 *East*, 182 ; 12 *ib.* 165.

If the attachment be a criminal process, it was awarded by the court against a party not criminally liable for the act on which the proceeding was founded.

2d. The attachment against a sheriff being derived from the English practice, that practice must be looked to in order to ascertain the mode of proceeding.

When an order for attachment is obtained, it is the practice of K. B. to issue an attachment *nisi.* This is regulated by the rules of that court. There is no rule of court or statute law of Georgia, known to the counsel, on this subject. And as the courts of Georgia have adopted this process from the practice of the Court of King's Bench, it is reasonable to suppose they adopted with it the mode of issuing and carrying it into operation.

The effect of personal service of rules and copies, and the demand of the payment of the money, or performance of the thing commanded, is to. perfect and complete the contempt ; and by the English practice, before the attachment for contempt can issue, an affidavit of the regular service of the rules must be made. In the case of costs, as between attorney and client, the attachment is " *nisi ;*" but as between plaintiff and defendant, it is absolute.—*Chit. Prac.* 606 ; *Dowl.* 533 ; 3 *ib.* 538.

By rule of K. B , *Trin. T.*, 17 *George* 3, it is ordered that attachments shall be absolute in the following cases only :

1st. For non-payment of costs on a master's *allocatur.*

2d. Against a sheriff for not obeying a peremptory rule to return the writ.

3d. For contempt of the court in the execution of the process of the court.— 2 *Dow*, 747 ; 3 *M. and Scott*, 556. On a return of rescue, the motion for attachment is absolute in the first instance.—3 *Chit. Prac.* 606 *n.*

It would seem at least to be the better practice, as the contempt begins on a failure to perform the mandate of the court, that the party alleged to be in contempt should be heard before punishment, as to his defence, if he has any ; and that the attachment should be, in the first instance, " *nisi*" only.

3d. In Lacock's case, (*Lutch*, 187,) and in *Sanderson* vs. *Sheriff of London*,

(3 *Wils.* 310,) it was said: "The sheriff shall be fined or amerced, and shall answer in damages to the party for the misdemeanor of the under-sheriff, but he shall not be *imprisoned* or indicted." There is no authority, it is believed, to the contrary,

The sheriff is not, then, liable to attachment and imprisonment for a default of his deputy in not paying over money collected on a *fi. fa.:*

1st. Because of the provisions of the Judiciary Act of 1799, the attachment and imprisonment is confined to his own default.

2d. Because, by the English practice, he was not so liable, previous to the Judiary Act of 1799.

3d. Because the act of the Legislature of 1841 has specially rendered the deputies of sheriffs liable for their own acts.

IVERSON L. HARRIS, *contra.*

*By the Court*—LUMPKIN Judge.

This was a rule against the late sheriff of Baldwin county, calling on him to show cause why he should not pay over to the plaintiff, the principal and interest due on a *fi. fa.* issuing from Baldwin Superior Court, in favor of Martin E. Edwards, for the use of Smith and Este, *vs.* Thomas Haynes. Stephens returned to said rule for answer, that it appeared by the entry of satisfaction upon said execution, dated 25th Jan., 1840, that his late deputy, John A. Deane, had received the money due thereon, and that the same had never come to his hands; and that he was advised and believed that a sheriff is not criminally responsible for the act of his deputy.

At August Term, 1846, Judge Merriwether decided, that this showing was insufficient, and that the plaintiff was entitled to have the rule made absolute. And on failure to comply therewith, he further ordered, that on application to the clerk an attachment should issue against the *body of the said* Stephens. To all of which counsel for the plaintiff in error excepted and complain:

1st. That the court erred in awarding an attachment against the late sheriff, after deciding he was not criminally liable for the acts of his deputy, because, as to the sheriff an attachment is a criminal process.

2d. The court erred in granting an attachment absolute against the late sheriff, without calling on him to show cause why a peremptory attachment should not issue.

3d. The court erred in ordering an attachment to issue against the late sheriff, the whole proceeding being founded on a *fieri facias*, because of a failure of his deputy to pay over money collected thereon by him: the sheriff is only liable to an action.

I do not deem it necessary to notice at all the first ground set forth in the assignment of errors, inasmuch as we are not called upon to decide whether the court was right or wrong in conceding, that the principal sheriff was not criminally responsible for the acts of his deputy; but to say whether or not the court erred in awarding an attachment against the late sheriff. And this judgment we must pronounce without regard to any other opinion expressed by the presiding judge in the premises.

Nor is it necessary to bestow more than a passing remark upon the

second point. Ordinarily, it is the regular course to move *first* a rule *nisi*. There are cases, however, where the rule for an attachment is made absolute in the first instance.—*Andrews* vs. *Sharp*, 2 *Blk. Rep.* 912; the *King* vs. *Peckham, ib.* 1218; 12 *Ves. Jr.* 202, 203; 3. *Chitt. Prac.* 606, *n.*

In the present case, it plainly appears that the sheriff had notice. He made what showing he could to purge himself of the contempt, and the order was that he pay the money, *or be attached.* He had his day then in court, and failing to obey the pronounced judgment of the court, it cannot be maintained that he should not be instantly attached.

The most material question yet remains to be considered—is the sheriff liable to be attached for the failure of his deputy to pay over money which he has collected on an execution ? Both upon principles of law and public policy, we are clearly of the opinion that he is.

It is needless to resort to the practice of the English courts, to show that the sheriff is constantly made responsible by attachment for the misconduct of his jailors, and other under officers. The books are full of such cases.—See 1 *Bingham*, 150, 423, *et passim.*

We hold that the 50th and 52d sections of the judiciary of 1799 are conclusive upon this subject. The 50th section of the act provides, " that the sheriff shall be liable either to an action on the case or to an attachment for contempt of court, at the option of either party, whenever it shall appear he hath injured such party by false returns, or by neglecting to arrest the defendant, or to levy on his property, or to pay over to the plaintiff or his attorney the amount of any sales which shall be made under or by virtue of any execution or any money collected by virtue thereof."—*Prin. Dig.* 431. And by the 52d section of the same act it is provided that, " whenever the sheriff of any county within this State shall fail to make proper returns of all writs, executions and other processes put into his hands, or shall fail or neglect to pay all moneys received on such executions, when he shall be required so to do, he shall be liable to an action for contempt, and may be fined, imprisoned, or removed from office, in the manner prescribed by the Constitution."—*Prin. Dig.* 432.

Can it be seriously doubted, that the enactments were designed to make the principal sheriff chargeable for the acts of his deputy ? Their cotemporaneous construction is conclusive with this court as to their true intent and meaning: more especially as their practical exposition has been acquiesced in by the Legislature for nearly fifty years.

But it is argued that the provisions apply only to the default of the sheriff himself; and that being penal in their nature they should not be strained so as to include under-sheriffs. This idea is founded upon a misapprehension of the proceedings. The sheriff is attached, not because his deputy has collected money on a *fi. fa.* which he neglects or refuses to pay over, *but for his own disobedience to the peremptory mandate of the court to pay over* this *money himself.* This constitutes the contempt ; and the appropriate punishment is awarded for his own default and not for the *miscarriage* of his deputy. That is a matter which the court decline looking into, leaving the controversy to be adjusted between the parties themselves. When the term arrives to which the *fi. fa.* is made return-

able, it is the duty of the sheriff to bring the execution into court, with his actings and doings thereon. If money has been collected he must account for it to the plaintiff. If he has appointed incapable or dishonest deputies, it is his misfortune; it is his own voluntary act, and he is clothed with authority to indemnify himself against loss by taking of his deputy ample security. Better far that the courts should supply to the creditor this summary justice, and leave the sheriff to his redress against his faithless or incompetent deputy, than to open a wide door for fraud and collusion between the principal and his subordinate, by driving the party to his action on the bond, which by the way does not at all times afford adequate relief, as the facts which have just transpired under our own eyes abundantly demonstrate. It appears by the sheriff's return to the rule that this money was collected by John A. Deane, the deputy of Stephens, 25th of January, 1840; and the fact is disclosed in the case immediately preceding this, against Stephens and his securities, that in his own opinion as well as that of the Inferior Court of Baldwin county, he had given no sufficient bond from his election in January, 1840, to the 3d of March of the same year. And yet he insists that this creditor shall be compelled to look to this very bond for satisfaction, executed more than one month subsequent to the alleged default of his deputy. Courts are constantly admonished to be cautious how they deprive parties of any remedy afforded them by the wisdom and forethought of the Legislature.

There is a still more appropriate reply to the objection, that these sections of the judiciary should be construed strictly on account of their being penal. If taken *literally* the 52d section includes the identical case under consideration. It declares, that " whenever the sheriff of any county within this State, shall fail to make proper returns of all writs, executions and processes, put into his hands or shall fail or neglect *to pay all moneys received on such executions, when he shall be required so to do,* &c. It would seem, therefore, that in the estimation of the Legislature it was altogether immaterial *who collected the money.* The liability of the sheriff to attachment and imprisonment, is predicated upon the fact, *of the collection of the money and the failure on his part to pay it over when required so to do.* Indeed this construction is warranted not only by the language, but as we verily believe by the spirit and equity of the act. It may be true, then, that the sheriff is criminally responsible *only for his own acts,* and that this severe remedy is confined to his own default. *That default consists in not paying over money collected on a fi. fa.* which has come into his hands—immaterial by whom the money was received, whether himself or his deputy—*when required so to do.*

It is conceded that the sheriff was liable, in England, to be attached in certain cases for the misconduct of his deputy. To this point the authorities are numerous and explicit. Can it be believed, that the Legislature, by attempting to enlarge his liability, have actually diminished it? and that by subjecting him to attachment in *other cases* than those recognized by the practice of the English courts, they have relieved him altogether, even in those cases where it is admitted he was before responsible? And yet such is the result of the reasoning which would restrict the clauses of our own law to the *sheriff,* to the exclusion of his deputy, because the latter is not specifically named! Such could never have been the intention of our law-makers. To my mind it is

most manifest that their purpose was to tighten the rein, and not to relax it—in other words, to enlarge the doctrine of constructive contempts. It would be singular enough to hold the sheriff liable to this process for the failure of his deputy—to arrest the body of the defendant upon bail process, the object of which is to secure the debt, and not to subject him to the same penalty for not paying over the money when collected on the execution! Such absurdity, we apprehend, is not properly chargeable to the law. If so, it is no longer entitled to the magnificent eulogy lavished upon it by Burke, "as the collected reason of ages, combining the principles of eternal justice with the infinite variety of human concerns."

The sheriff, by the bond which he executes before entering upon the discharge of his duty, obligates himself for the faithful performance not only of his own conduct, but that of his deputies also. And until the act of 1841 was passed, rendering deputies liable for their own default, the public looked to the principal only, and never beyond him. All rules were taken against the high-sheriff, whether for the failure of himself or his deputy, to pay up all moneys received on executions. Sheriffs were in the habit of fraudulently absenting themselves from court, to avoid being ruled. And as the deputy could only be reached through the principal, parties were subjected to great delay and inconvenience. And this was the mischief which gave rise to the act of 1841, making the deputy directly responsible for his own default, *nevertheless* reserving, in express terms, the existing remedies against the principal. It provides, "that all deputy sheriffs shall be liable to be ruled and attached in the *same way and manner as sheriffs;* but the liability of the sheriff shall not be affected by any such proceeding against his deputy, where the same is not effective."—*Cobb's Analysis,* 123. Strange that an argument should be invoked from this statute in favor of sheriffs! It is a strong legislative confirmation of the doctrine ruled by the court below, and which seems never to have been questioned until recently. It shows clearly that, previous to the passage of that act, the sheriff was liable to be ruled and attached for the acts of his deputy; and it is well known for none so commonly as his failure to pay over money collected on executions. It proves, further, that, since its passage, the liability of the sheriff for the delinquency of his deputy, is in no wise altered, where the proceeding against the deputy is not effective.

If, in the face of the very words of the act to the contrary, it should be decided that, by subjecting the deputy directly to attachment, the sheriff had been exonerated, the evil intended to be cured has been greatly aggravated. The responsibility of the principal is to be preferred, in any view of it, to that of his deputy, if parties can look to *one only* for satisfaction.

Delinquency in regard to *trust* funds has been uniformly treated with marked and merited severity. In this State it is punished by Penitentiary imprisonment; and a party thus in default has always been excluded from the benefit of the bankrupt laws, passed in England and in this country.

We will not say that a sheriff, committed under these circumstances, would not be entitled to his discharge upon proof made that he had exhausted his own property, and that of his deputies and securities, and

was still unable to respond to the rule. Although the terms of his imprisonment be without bail or mainprize, still one should be strongly inclined to the opinion, that there could be no contempt, actual or implied, under such proof.

But were it otherwise, we could not attempt, for that reason, to make a precedent which would overturn the laws of the land. I would lament that the difficulty existed; still I would be for referring the subject to the consideration of the General Assembly.

Our jurisdiction is large enough as it is: *we must take care not to extend it;* and begin by doing that which our predecessors in the Circuit Courts have never ventured to do, and which our successors on the bench would lament our having done, namely, passed a *judicial ordinance* for abolishing imprisonment in certain cases.

Our opinion is, that the judgment below must be affirmed.