### JOHN B. LANGDON, EXPARTE ON HABEAS CORPUS.

*Habeas Corpus.   Proceedings for contempt, &c.*

Where the relator was proceeded against for contempt, in disobedience of an order of the chancellor upon the showing of the other party, and the adjudication of the chancellor was upon this showing alone, without any attempt to give notice to the person convicted, the proceeding *was held* to be irregular.

*It was also held*, that this proceeding for contempt, must be regarded as a distinct and independent matter, as much as a new suit, and that it requires distinct notice, as much as a new suit.

HABEAS CORPUS, on the petition of John B. Langdon, in which petition he set forth, that he was unlawfully imprisoned in the jail at Montpelier, by virtue of a warrant signed by J. COLLA-

MER, Chancellor, dated at Woodstock, on the 14th day of July, 1853 ; and that the relator has never been permitted and allowed an opportunity of defending himself, against the charge of disobedience of the injunction of said CHANCELLOR, and that the hearing on said charge, was *exparte*, and without notice to the relator.

The order and decree of the Chancellor, was as follows :

" Whereas it appears satisfactorily to me, the subscriber, one of " the Chancellors of this State, on a hearing of the evidence ad-" duced by the complainant in the foregoing petition, (reference " being had to the petition of Adeline Langdon,) that John B. " Langdon, of Montpelier, has been guilty of a wilful breach of an " injunction issued by me on the petition of Adeline Langdon, dat-" ed July 9th, A. D. 1853, thereby commanding said John B. " Langdon, to refrain from interfering, or intermeddling with, any " of his three children, and that the said John B. Langdon, now " continues to violate said injunction : it is therefore adjudged and " ordered, that the said John B. Langdon, be committed for his said " disobedience and contempt, to the common jail in Montpelier in " the County of Washington, State of Vermont, there to remain, " until the further order of some CHANCELLOR of this State, or " otherwise discharged by authority of law, and that an attachment " do issue, to carry this judgment into effect.

" Dated at Woodstock, July 14, A. D. 1853."

It appeared on the hearing before the CHANCELLOR, that the said John B. Langdon, in disobedience of the injunction above named, had forcibly taken one of the said children, and had secreted and concealed the said child, from the said Adeline Langdon who was the mother of said child, and the wife of the said John B. Langdon.

The opinion of the court was delivered by

REDFIELD, Ch. J.    Without regard to the disposition of the libel for divorce, between the petitioner and his wife, it seems necessary to pass upon the question, of the relator's discharge. For, although the injunction, only extends to the final judgment of this court in the libel for divorce, and therefore probably, no new process for contempt could be originated, after the injunction had expired by its own limitation, even for a disobedience which occurred during its continuance, still, one being actually committed for

XXV.    44

contempt by an unlimited order, could not be discharged, upon the mere ground of the expiration of .the injunction, certainly not, by another court. The former contempt and disobedience to the order of the Chancellor, would not be thereby purged.

We have not deemed it important, to look into all the objections urged, or to inquire whether the powers of this court upon *habeas corpus*, are, by statute, more extensive than by the common law. It is no doubt perfectly competent, for the legislature to give this court a power of revising the legality of commitments, by all other courts, upon *habeas corpus*. And the terms of the statute seem to indicate, that such probably, was the purpose of the legislature. But we are not prepared to say, that we could thereby, reexamine the adjudication of contempt of a court of competent jurisdiction, having the parties before them,—probably not.

But it seems to us, that this adjudication of the Chancellor, that the relator was in contempt, professedly upon the showing of the other party as appears on the face of the papers, and without any attempt to give notice to the person convicted, must be regarded as irregular. The examination of the proceedings shows, that the application, the hearing, the adjudication, and the issuing of a warrant or mittimus, for inflicting the punishment of indefinite imprisonment, was all on the same day, and in fact, confessedly, at the same moment. I can find no precedent for any such proceeding, and in principle, it is certainly a very irresponsible authority, to extend to any tribunal. It is of the essence of all convictions, or adjudications, that the party accused. should have an opportunity to be heard, in his defence. Not always before a jury perhaps, but that he should, at least, in contemplation of law, have some opportunity for defence.

And in convictions for contempt, which are always a summary, an arbitrary, and offensive jurisdiction, (unless the contempt be committed in view of the court, or magistrate,) the party accused is to have an opportunity to be heard, before he is adjudged finally guilty of the contempt, and punished. He may be, and often is, committed, before the conviction for the contempt. But this is done to secure his presence before the court, to answer for the contempt, when he may be convicted. These proceedings for contempt are various. The more usual course, certainly is, a rule to show cause why one should not be adjudged guilty, and punished for contempt.

Sometimes, an order is made *nisi*, that is, the party is notified, that he will be adjudged guilty, &c., unless, before such a day, he show cause to the contrary. Or, he may be proceeded with, in the first instance by an attachment, which is something very different from this mittimus. An attachment for contempt in the first instance, for disobedience to a decree of the Court of Chancery, is merely a process, to arrest the body of the person complained of, and bring him before the court to show cause, why he should not be adjudged guilty and punished, &c., for the contempt.

But this proceeding, in terms is an adjudication of the relator being guilty of the contempt, and that process issue for his arrest and commitment, or punishment. If the party is out of the jurisdiction, process may be left at his usual abode, or with his solicitor. But here, nothing of the kind is attempted. It seems to be assumed, as the general rule of chancery law, that the parties being served with process, for the general purposes of the suit, may be proceeded against, and adjudged guilty of contempt, without notice, or excuse therefor, and punished. But this is a distinct, and independent matter, as much as a new suit, and obviously requires a distinct notice, as much as a new suit. Such is the uniform practice of Courts of Chancery, as far as we can learn, and for this irregularity, we think the respondent is entitled to be discharged.

It is said, the order of Chancellor LANSING, against Mr. Yates, is similar to the present. But in the previous proceedings in that case, which were a part of the order, it did appear, that Mr. Yates was notified to appear before the Chancellor, and show cause, and declined. See the opinion of Senator Platt, in *Yates* v. *Lansing* 9 Johns. 417, where it is said, "It also appears, by the order of conviction, (not the warrant,) that the plaintiff was regularly requir-ed to answer the complaint," and was, after refusal, convicted.

We forbear to comment upon the form of the commitment. The English authorities, do not seem to recognize this form of commitment for contempt. 7 Com. Law 292.

But whatever of irregularity there is, the relator ought perhaps to excuse, on the ground of the flurry caused by his own proceedings and threats, which if they would not justify, might account perhaps, for some haste and consequent irregularity, in the steps adopted to counteract his own proceedings.

Respondent discharged.

We do not intend to decide, that this adjudication and commitment were absolutely void. But we think it so irregular on its face, that the respondent is entitled to his discharge.

After attachment for contempt, the more usual course is, where the decree to be enforced is the payment of money, to proceed by sequestration. But if the enforcement of collection of money is not the object, but some other matter, then says Mr. Daniel, 2 Vol. 1253 *et passim*, a sequestration may be obtained by order of court, and the money, goods, chattels, land, and even choses in action by some authorities, be put into the possession of officers of the court, until obedience is enforced, and in the mean time the party lies in prison, on the attachment. But the attachment, in the first instance, is never issued except in cases of actual necessity, and where notice cannot be given. And the party is never proceeded with, by an actual commitment to enforce the decree, or obedience to it, until after an opportunity to be heard in excuse. For possibly, his disobedience might have been through ignorance of the law, or inadvertance. 2 Daniels' Chan. Prac. 1278 *et seq*. According to the old common law chancery practice, it was common to order a contumacious defendant, " to be kept a close prisoner, and has even gone the length, of setting a fine upon him, and of restraining his wife and children, from coming to him." 2 Daniels' Chan. Prac. 1278. But in making such orders, and all orders, by way of punishment to enforce the decree, or for the former disobedience and contempt, the person accused was to be " brought up on *habeas corpus.*"

The proceedings in this case, are confessedly conformed to those of the New York Chancellor, in the case of Yates, where the party was adjudged guilty of contempt of the court, and a warrant of commitment issued for the mere purpose of punishment, and in no sense, to enforce an order of the court, or prevent future violation, except as all punishment has that effect. But the essential difference is, that in that case, the party was, or might have been heard, and here, not. For one, I should not be prepared to sanction the regularity of this proceeding, if it could be shown to have obtained in other States, or at common law. But it is evident to us, that it never did anywhere, where the common law of England has traveled.

In regard to the jurisdiction of the Chancellor over this whole

case, we deem it needless to enquire. The Court of Chancery, in this State, has no general jurisdiction upon the subject, as in New York. This court, had in fact, the exclusive jurisdiction of the general subject, while this petition is pending. The most which can be said is, that it is in analogy to a course of practice, which has grown up in the Court of Chancery, in the last twenty years, in this State, of enjoining the libellee from disposing of his property during the pendency of the libel. Both stand on the outer verge of chancery jurisdiction, and should at least, be held to confer no extraordinary powers. I should not however, be inclined to question the right of the Court of Chancery to interfere in this matter, in aid of the general powers of this court. But it clearly could not be done in this extraordinary mode.

---

NOTE. Several decisions of the Chancellor of New York are to be found, in Paige's Ch. R. upon the subject of proceedings for contempt. In *The People* v. *Rogers,* 2 Paige 103, the form of procedure is set out very much at large. The prisoner in this case, being already in prison upon civil process, was brought up on *habeas corpus,* to answer the complaint for contempt, and was required to answer interrogatories. In *McCredie* v. *Senior,* 4 Paige 378, it is decided, that, "The order for an attachment, to bring the defendant into court to answer for the contempt, *should not contain an adjudication of the court, that he has been guilty of the contempt.*" It is also said, "In proceedings for criminal contempt, all proceedings subsequent to the order for attachment, or to show cause, including such order, should be in the name of the people." And in the *People* v. *Craft,* 7 Paige 325, it is decided, that the proceedings may be either in the name of the people, or the relator. But in both cases, treating the prosecution for contempt as a new case, and requiring distinct notice to the person accused, as much, as a prosecution for a criminal offence. And in the *Albany City Bank* v. *Schamerhorn,* 9 Paige 372, it is expressly decided, that "where the party proceeds by attachment, for alledged contempt, he must file interrogatories, and obtain the answers thereto, before the court can make a final order, unless the accused upon being brought into court, upon the attachment, admits the contempt, as charged."