### EX PARTE I. M. MASON.

#### June 10, 1884.

1. HABEAS CORPUS — JURISDICTION. — Inquiry under a writ of *habeas corpus* is generally limited to the question as to whether the process under which the prisoner is held was issued by a court of competent jurisdiction and in a case allowed by law.

2. —— CONTEMPT — NOTICE — PRACTICE. — The court may issue an attachment for a person accused of contempt committed out of the presence of the court, without first making a preliminary order to show cause.

3. —— An attachment, which sets forth specifically the act charged as contempt of court, is such notice as will satisfy the statute.

4. —— In a proceeding by *habeas corpus*, it will not be presumed that the person accused of contempt will be punished without a fair hearing.

5. —— An attachment for contempt being regularly issued by the circuit court of one county against the sheriff of another county for refusing to execute the process of the court in his bailiwick, the prisoner will not be discharged under a writ of *habeas corpus*.

APPLICATION for a writ of *habeas corpus*.
*Prisoner remanded.*
KRUM & JONAS, for the petitioner.

THOMPSON, J., delivered the opinion of the court.

The petitioner, Isaac M. Mason, sheriff of the city of St. Louis, has been arrested and detained by Sylvester Nidelet, coroner of said city, under an attachment issued by the circuit court of Webster County, charging the petitioner with a contempt of said court in refusing to execute an attachment issued by said court against a witness on behalf of a defendant who stood indicted for the crime of arson. The petition sets forth in *hæc verba* the attachment under which the petitioner is detained. This attachment sets forth the particular circumstances of the offence charged against the petitioner as a contempt, and it hence complies with the provisions of section 1058 of the Revised Statutes. By the *habeas corpus* act "no court * * * shall * * * have power to inquire into the legality or justice of any process, judgment, decree, or order of any court legally constituted." Rev. Stats., sect. 2651. Provisions exist in the *habeas corpus* act forbidding the discharge of the prisoner where he is held for a contempt, "specially and plainly charged in the commitment." Rev. Stats., sects. 2648, 2651. These last provisions do not apply to the case before us, because the petitioner is not held under a commitment, which issues after a *conviction*, but under an *attachment*, which is initial process. The case is therefore governed by the clause above quoted from section 2651.

Jurisdiction under the writ of *habeas corpus* to inquire into the cause of detention, where it appears, the prisoner is held under legal process before judgment, is generally limited to the inquiry whether the process under which the prisoner is held has been issued by a court of competent jurisdiction and in a case allowed by law. If the writ of attachment, under which the petitioner is held, has been issued by such a

court and in such a case, we are forbidden by the provision
of the *habeas corpus* act above quoted, from inquiring into
its justice or legality, — the word legality not being here
used in the sense which would exclude inquiries touching
matters of jurisdiction.

The defendant in the indictment for arson in the circuit
court of Webster County was entitled to compulsory pro-
cess to secure the attendance of witnesses in his behalf.
Const. Mo., art. II., sect. 21.   He was entitled to such pro-
cess, and any witness subpœnaed in his behalf was bound to
attend, without the payment or tender of any fees for such
attendance (Rev. Stats., sect. 1850) ; and a witness so sub-
pœnaed was liable to be compelled so to attend by a writ of
attachment against his body, which might be served in any
county in this state.   Rev. Stats., sects. 1850, 4022.   By
section 3891 of the Revised Statutes " every sheriff shall
*   *   *   execute all process directed to him by legal au-
thority."

Under these provisions there can be no question that the
writ of attachment recited in the attachment against this
petitioner for contempt, issued by the circuit court of Web-
ster County commanding this petitioner, as sheriff of the
city of St. Louis, to attach the body of F. C. Norvell, who
had been subpœnaed as a witness on behalf of the defendant
in the case of the state of Missouri against T. K. Paul, in-
dicted for arson, pending in said court, was lawful process,
which the sheriff was bound by law to execute.

Power in a court of record to issue process to a sheriff,
or other officer of the state appointed to execute the same,
necessarily implies a power to compel obedience on the part
of such officer, to the end that the same be executed.   The
Revised Statutes, giving effect to this principle of common
law, provide that " each court may enforce by attachment
the return of any writ or process sent out of the same court."
Rev. Stats., sect. 1040.   It is also provided that " every
court of record shall have power to punish, as for a crimi-
nal contempt, persons guilty of any of the following acts:

3d.   *   *   *   Wilful disobedience of any process or order lawfully issued or made by it." Rev. Stats., sect. 1055.

There can be no question then that the attachment under which the petitioner is held has been issued by a court of competent jurisdiction and in a case allowed by law, unless an objection urged on his behalf is to be regarded as a sound one.   This will now be considered.

It is provided in the Revised Statutes that "contempt committed in the immediate view and presence of the court may be punished summarily; in all other cases, the party charged shall be notified of the accusation and have a reasonable time to make his defence." Rev. Stats., sect. 1057. It is argued that in issuing an attachment without any preliminary order to show cause, the circuit court of Webster County is proceeding in violation of this provision.   We do not so understand it.   The statute is merely declaratory of the common law.   A contempt of court is in the nature of a crime against the state.   Beyond question, before a person can be subjected to punishment for such an offence, he is, by the principles of the common law and by the guaranties of American constitutions, entitled to notice, and to an opportunity to be heard in his defence, and a conviction which takes place without notice is merely void.   *The State* v. *Mathews*, 37 N. H. 450, 454; *The People* v. *Turner*, 1 Cal. 152; *Sommersett* v. *Zellers*, 2 Halst. (N. J.) 31; *Ex parte Langdon*, 25 Vt. 680; *Worcester* v. *Truman*, 1 McLean (U. S.), 483, 485; *Ex parte Ireland*, 38 Texas, 344. The right secured by the statute being, then, merely a right which existed at common law, and which is understood to be secured by constitutional guaranties, it remains to consider whether, in the case of a contempt committed out of the immediate presence of the court, this right of the accused is infringed by issuing an attachment against him in the first instance, without a preliminary order to show cause.

According to the more usual practice in these cases, there

are two proceedings which are analogous to the preliminary examination and the trial in an ordinary criminal prosecution. The first is a preliminary order to show cause, not why the accused should not be punished for the alleged contempt, but why an attachment should not be issued against him for the same. Upon the return of this order, there is regularly a proceeding somewhat in the nature of a preliminary examination in a criminal case. The accused may appear either in person or by counsel. The formalities of a regular trial are dispensed with. He may show cause by *ex parte* affidavits, or in any other appropriate mode. If he fails to show sufficient cause, an attachment is regularly issued, upon which he is arrested and brought before the court and there required in person to answer interrogatories. At common law, his answers are conclusive in his own favor; but according to the English chancery practice, countervailing evidence will be heard. This is the formal trial which takes place; and if, upon this trial, he fails to purge himself, the court proceeds to assess the punishment. This may be regarded as a fair outline of the more usual practice in American courts.

But, while it is usual in cases like the one at bar to proceed by a preliminary order to show cause, it is well settled that the court may, in the exercise of a sound discretion, dispense with the order to show cause, and proceed by attachment in the first instance. The power to do this in many cases is highly essential — as where an evasive return is made to a writ of *habeas corpus* (*Matter of Stacy*, 10 Johns. (N. Y.) 328 ; *United States* v. *Bollman*, 1 Cranch (U. S. C. C. 373 ; *The State* v. *Raborg*, 2 South. (N. J.) 545 ; *Rex* v. *Winton*, 5 T. R. 89 ; *Rex* v. *Wright*, Strange, 915 ) ; or where a sheriff returns a rescue ( *The State* v. *Ackerson*, 25 N. J. L. 209) ; or where the proceeding is in aid of a civil remedy and the accused is about to abscond. It seems to be universally agreed among the American courts that the court is at liberty, in the exercise of a sound discretion,

to proceed in the first instance in either mode (*Fanshawe* v. *Tracy*, 4 Biss. (U. S.) 490, 496; *Matter of Stephens*, 1 Ga. 584, 587; *Petrie* v. *The People*, 40 Ill. 335, 344; *Thomas* v. *Cummins*, 2 Yeats (Pa.), 1; compare *Andrews* v. *Sharp*, 2 Bla. 912; *Rex* v. *Peckham*, *Id.* 1218; *Matter of Smethurst*, 2 Sandf. (N. Y.) 724; *Kernodle* v. *Cason*, 25 Ind. 362); and that no constitutional right, or right existing at common law is infringed by proceeding by an attachment in the first instance. *Ex parte Petrie*, 38 Ill. 498; *Ex parte Langdon*, 25 Vt. 680. The attachment, it must be remembered, is not a commitment. It does not issue in consequence of an adjudication, nor does it purport to adjudicate the guilt of the accused. *McCreadie* v. *Senior*, 4 Paige, 378. It is merely a compulsory writ, whose office it is to bring him before the court, where he will be allowed full opportunity to make his defence. *Jackson* v. *Smith*, 5 Johns. (N. Y.) 117; *The State* v. *Mathews*, 37 N. H. 450, 453.

An attachment like the one under consideration, which sets forth specially and plainly the matter of contempt charged against the accused, is in itself notice, and in this regard it complies with the requirements of section 1057 of the Revised Statutes, that "the party charged shall be notified of the accusation." The attachment before us does not adjudicate the guilt of the petitioner. It requires him to be brought before the circuit court of Webster County on a day named, "then and there to answer for a contempt of this court, and to show cause why he should not be further dealt with according to law." We can not anticipate the action of the circuit court of Webster County, and presume that the petitioner will be deprived of the other right which the statute gives him, namely, "a reasonable time to make his defence."

It thus appears that the attachment under which the petitioner is held is process issued by a court of competent jurisdiction and in a case allowed by law. Every superior

court of record is, within the limits prescribed by statute, the exclusive judge of contempts committed against its authority. It is not competent for any other court to intercept its process, lawfully issued, or to anticipate its judgment, by inquiring into the merits of the matters in respect of which its process has been issued. '

It is ordered that prisoner be remanded to the custody of the coroner of the city of St. Louis. All the judges concur. Judge LEWIS files a separate opinion.

Separate opinion by LEWIS, P. J.

If the petitioner is answerable for a contempt, the case is one in which, by command of the statute, he " shall be notified of the accusation, and have a reasonable time to make his defence." Regarding him merely as a citizen, entitled to every presumption of innocence until proved to be guilty, I think there is no sort of compliance with the statute, when he is arrested, deprived of liberty, and dragged in custody to a distant county, there to prove his innocence, if he can. The proceeding assumes that he is guilty enough for that any how, and tries him afterwards. I think the legislature meant something when it substituted a restrictive rule for the discretion vested in the courts by the common law to proceed either with or without previous notice.

But the law which directed the petitioner, as sheriff, to execute the process of the Webster circuit court made him, for all the purposes of that process, an officer of the court. Every court has authority to compel the personal attendance of its officers, when necessary to the due performance of its functions, or in vindication of its authority. On this ground alone I think it is proper to remand the prisoner.