## *Ex parte* HENRY PETRIE.

1. NOTICE—*attachment for contempt.* In a proceeding against a party by attachment for an alleged contempt for disobedience to an order of the court, it is not necessary that notice of the proceeding shall be given the party before the attachment can properly issue.

2. The attachment, in such case, is merely a process, to arrest the body of the person complained of, and bring him before the court to show cause why he should not be adjudged guilty and punished for the contempt.

This was an application to this court by Henry Petrie, for a writ of *habeas corpus*.

The petition sets forth, substantially, that the petitioner is detained against his will in the custody of the sheriff of Cook county, not for any criminal or supposed criminal offense, committed by, or alleged to have been committed by him against the laws of the State of Illinois, or of the United States, or any of said States, but upon the following state of case: On the 25th day of January, 1865, Martha A. Petrie, the wife of the petitioner, exhibited her bill in chancery in the Superior Court of Chicago, against the petitioner, praying for a divorce; and in March following she filed in the same court her petition for temporary alimony to enable her to support herself and her two infant children pending the suit, and to enable her to prosecute the same. The petitioner answered the bill, but before the cause came on for a hearing, such proceedings were had upon the petition for temporary alimony, that the court made an order on the 21st day of March, requiring the petitioner to pay the sum of fifty dollars as

alimony by the 24th day of the same month. The petitioner failing to comply with this order of the court, an order was entered on the 25th day of March, reciting that the petitioner had failed to comply with the order of the court previously made, requiring him to pay the sum mentioned, as temporary alimony, and on motion of the complainant directed that a writ of attachment issue against the petitioner for a contempt of the Court in not obeying its order in that regard.

This order for an attachment was made without any notice to the petitioner that an application for that purpose would be made, and without his knowledge.

In pursuance of the order, a writ of attachment was issued, under which the petitioner was arrested by the sheriff and brought before the court, and thereupon such proceedings were had that an order was entered of record, reciting the former action of the court in relation to the subject of alimony, and the issuing of the attachment, and now that the petitioner was personally before the court, failed to purge himself of the alleged contempt, and it appearing that the petitioner had not as yet paid the said sum of fifty dollars so ordered to be paid by him, but had committed the contempt with which he was so charged, it was, on the motion of the complainant, ordered, that the petitioner stand committed to the county jail of Cook county, there to remain, charged with this contempt, until he should have paid the said sum of fifty dollars, together with the costs and charges therein incurred, or until the further order of the court. And it was further ordered that a warrant of commitment issue to the sheriff accordingly.

On the same day a warrant of commitment was issued, under which the petitioner was committed to jail.

This being the only authority under which the sheriff held the petitioner in custody, he prayed a writ of *habeas corpus*, to the end that he might be released therefrom.

Mr. E. M. Haines, for the petitioner, insisted that the proceedings before the Superior Court were irregular, because no

notice was given to the petitioner in the proceedings against him by attachment. This has been held to be essential, and may be inquired into in a proceeding upon *habeas corpus. Ex parte Langdon*, 25 Vermont R. 680.

Mr. HAINES also presented the question whether the court of chancery has power to allow temporary alimony pending the suit for a divorce; but that is considered in a subsequent case.

PER CURIAM: We do not see sufficient reasons for granting this application. The ground presented is, that the proceedings in the Superior Court were irregular, because no notice was given the petitioner in the proceedings against him by attachment. We recognize the principle that it is of the essence of all convictions, or adjudications, that the party accused, should have an opportunity to be heard in his defense. But that principle does not controvert the regularity, in that regard, of this proceeding, for we find that the petitioner was given that opportunity in as ample a manner as was consistent with the nature of the case. It can not be said that a party has no proper notice of a proceeding against him, merely because the first intimation he receives of it is by an arrest under a process of the court. In the case of an ordinary writ of *capias ad respondendum*, which is the first process in a cause under the proper state of facts, the very first notice the defendant receives of the proceeding is by·an arrest under the writ. Yet it has never been supposed that such a step in a cause contravened the rule that a party shall first have an opportunity to be heard in his defense before his rights shall be determined.

We are referred to the case of *Langdon ex parte*, 25 Vermont 682, as sustaining the view that the petitioner should have received notice of the application for the attachment before the writ could regularly issue. So far from sustaining such a proposition, that case very clearly vindicates the entire regularity of the proceeding in the court of chancery. In that case the party was adjudged guilty of the contempt, and a warrant·of

commitment was actually awarded and issued, and the party arrested and imprisoned without any previous notice of the proceeding, or any opportunity to purge himself of the alleged contempt; and Chief Justice REDFIELD very properly held that before he was adjudged finally guilty of the contempt, and punished, he should have had an opportunity of being heard. In the case at bar that opportunity was given. The petitioner was not finally adjudged guilty of the contempt until he was arrested and brought before the Court for the very purpose of being heard, and to enable him to purge himself of the alleged contempt if he could do so. And having that opportunity, it was not until after he failed thus to purge himself that he was finally adjudged guilty of the contempt, and a warrant of commitment awarded.

The office of the attachment was merely to secure his presence before the court, with the view that while he might have the opportunity of being heard, yet, that he should not be enabled, in the mean time, to elude the process of the court. The regularity of the steps taken in this case is sanctioned by the express language of the learned Chief Justice in the case cited. In reference to the proceedings which may be had before the party charged with the contempt can have the opportunity of being heard, he says: "He may be, and often is, committed, before the conviction for the contempt. But this is done to secure his presence before the court, to answer for the contempt, when he may be convicted. These proceedings for contempt are various. The more usual course, certainly is, a rule to show cause why one should not be adjudged guilty, and punished for contempt. Sometimes an order is made *nisi*, that is, the party is notified that he will be adjudged guilty, &c., unless, before such a day, he show cause to the contrary. *Or, he may be proceeded with, in the first instance, by an attachment, which is something very different from this mittimus. An attachment for contempt in the first instance, for* disobedience to a decree of the court of chancery, is merely a process to arrest the body of the person complained of, and bring him

arrest the body of the person complained of, and bring him before the court to show cause, why he should not be adjudged guilty and punished, &c., for the contempt.

*Habeas corpus refused.*