ANTHONY J. GRECO, Plaintiff-Appellee, v. BARRETT COLEMAN, Defendant-Appellant.

Fifth District   No. 5—87—0711

Opinion filed November 7, 1988.

John W. Leskera and Edward L. Adelman, both of Dunham, Boman & Leskera, of East St. Louis, for appellant.

Callaghan & Moran, P.C., of Trenton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

This case presents itself to us on appeal for the second time, and we affirm as modified the judgment of the circuit court of Madison County. The action was initially brought by plaintiff, Anthony J. Greco, to recover damages for injuries sustained as a result of the medical malpractice of defendant, Barrett Coleman, M.D.

Plaintiff was involved in an automobile accident on or about September 7, 1973, in which he sustained numerous injuries, including a fracture of his odontoid process. Immediately following the accident, plaintiff was transported to St. Elizabeth's Hospital in Granite City, Illinois, where his cervical spine was X-rayed. The radiologist who interpreted the X rays found no fracture, but because plaintiff was complaining of head and neck pain, his neck was immobilized by a cervical collar.

When, after approximately two weeks, plaintiff's head and neck pain had not subsided, defendant, an orthopedic specialist, was called in for consultation. After reviewing written notations by the nurse and plaintiff's treating physician, defendant removed plaintiff's cervical collar and manipulated plaintiff's neck through a range of motion. Only then did defendant review plaintiff's X rays. Defendant determined that the X rays showed no fracture.

Plaintiff's head and neck pain continued, and further examination by doctors other than defendant revealed a fracture of plaintiff's odontoid process. Surgery was required and plaintiff remains permanently disabled.

At trial, plaintiff claimed that defendant's failure to diagnose and properly treat the odontoid process fracture was a proximate cause of his injuries. Plaintiff's expert witnesses testified at trial that defendant was negligent in failing to recognize the possible fracture, in fail-

ing to take follow-up X rays or tomograms of plaintiff's cervical spine and in failing to review plaintiff's X rays with a radiologist in consultation. Plaintiff's expert witnesses further testified that prompt diagnosis and treatment of the fracture would have made more conservative, nonsurgical treatment completely effective and would have allowed plaintiff's neck to heal with no loss of motion.

Following the first trial of this cause in April 1978, the jury was unable to reach a verdict and a mistrial was declared. The case was retried in May 1981. The issue of defendant's liability was hotly contested; however, the second trial resulted in a verdict in favor of plaintiff in the amount of $32,500. Contending that these damages were palpably inadequate and against the manifest weight of the evidence, plaintiff moved for, and was granted, a new trial on damages only.

Pursuant to Supreme Court Rule 306 (107 Ill. 2d R. 306), defendant filed a petition for leave to appeal from this order, arguing that the trial court had erred in granting a new trial on the issue of damages only. Defendant argued that the issues of liability and damages were so intertwined and indistinct that to grant a new trial only on the issue of damages was unfair to defendant. Defendant argued that, considering the conflicting evidence on the issues of liability, proximate cause and whether plaintiff's injury resulted from defendant's conduct or the automobile accident, a trial on damages alone would be grossly unfair to defendant. Defendant asked that this court affirm the jury's verdict or remand the cause for retrial on all issues.

Defendant's petition for leave to appeal was granted and this court affirmed the judgment of the circuit court granting plaintiff a new trial on damages only. (*Greco v. Coleman* (1985), 138 Ill. App. 3d 317, 485 N.E.2d 1118.) We specifically found that there was ample evidence at the second trial to support the jury's finding of liability and that the issues of liability and damages were so separate and distinct that a new trial on damages alone would not be unfair to defendant. We remanded the cause for a new trial "on the question of damages only."

Prior to the third trial on the question of damages, plaintiff filed a motion *in limine* seeking to bar defendant from introducing any evidence for the purpose of proving that plaintiff's disability was not caused by defendant's negligence. Defendant sought to introduce evidence that plaintiff's disability was caused by the automobile accident in which he sustained the odontoid process fracture, and not by the subsequent treatment by defendant. The trial court granted plaintiff's motion *in limine*.

The cause proceeded to trial and the jury assessed damages in the amount of $496,327.80. Because defendant had been discharged in bankruptcy, this amount was reduced by the trial court to $100,000, the limit of defendant's insurance coverage.

Defendant appeals, arguing that he should have had the opportunity to attempt to show that plaintiff's disability was caused by the automobile accident rather than by defendant's treatment of the injuries sustained in the automobile accident. In other words, defendant argues that he should have been allowed to relitigate the issue of causation on retrial. We disagree.

The issue of whether plaintiff's permanent injuries were caused by the automobile accident or by defendant's negligent treatment of the injuries sustained in the automobile accident was litigated in the second trial of this cause and decided adversely to defendant. In our opinion in the first appeal of this cause, we stated:

> "In the instant case, there is evidence which amply supports the jury's finding of liability. To find a physician liable for negligent medical practice, the plaintiff must affirmatively establish the appropriate standard of care, that the defendant violated this standard of care, and that defendant's lack of skill or care caused harm to plaintiff. *** [I]t cannot be said that the jury's finding of liability was not amply supported by the evidence." *Greco v. Coleman* (1985), 138 Ill. App. 3d 317, 323-24, 485 N.E.2d 1118, 1122.

Following the second trial of this cause, the jury found that defendant's treatment of plaintiff's injury was negligent and caused harm to plaintiff. We affirmed that finding on appeal as amply supported by the evidence. Because the issue of causation has already been decided in this case, the trial court properly barred defendant from relitigating the issue.

> "The law is well settled that questions of law which have been decided by an Appellate Court on the appeal of a cause will not be again considered on a second appeal; that they are binding not only on a Trial Court in the further progress of the cause, but also on the Appellate Court in any subsequent appeal." *Ritter v. Ritter* (1942), 313 Ill. App. 407, 412, 40 N.E.2d 565, 568.

The trial court ordered a new trial only because it found that the jury's assessment of the monetary value of the harm caused to plaintiff by defendant's negligence was inadequate and against the manifest weight of the evidence. We affirmed that order on appeal for the same reason. Therefore, the only issue to be relitigated on remand

was the amount of damages properly to be awarded plaintiff. We think this is clear from our opinion in the first appeal of this cause.

█ Where an appellate court reverses a judgment, its findings are final upon all questions decided, and the court to which the cause is remanded can take only such proceedings as conform to the judgment of the appellate court. (*Zokoych v. Spalding* (1980), 84 Ill. App. 3d 661, 666, 405 N.E.2d 1220, 1225.) Thus, the trial court properly granted plaintiff's motion *in limine* barring defendant from introducing any evidence in an attempt to show that plaintiff's disability was not caused by the negligence of defendant.

There is another issue before us in this appeal. Prior to the first trial of this cause, on April 4, 1978, plaintiff entered into a "loan receipt agreement" with certain former defendants which provides:

> "ANTHONY J. GRECO hereby acknowledges receipt from GEOFFREY W. MILLER, NOAH SUSMAN, GENE W. SPECTOR, H.R. SENTURIA, GERALD L. SHAIKUN, CHARLES J. CHERRE and B.S. LOITMAN, of the sum of $12,500.00, and from LESLIE G. REED, of the sum of $5,500.00, and from ST. ELIZABETH'S HOSPITAL of Granite City, Illinois, an Illinois corporation, of the sum of $2,000.00 as loans without interest which sums I promise to pay from any settlement or judgment I am legally entitled to collect from BARRETT L. COLEMAN, M.D., provided that I shall have no obligation to pay said sums from that amount of any settlement or judgement I obtain against BARRETT L. COLEMAN, M.D., which exceeds $20,000.00. I further agree that I shall use and pursue any reasonable and legal means which are available to me to collect any judgment I obtain against BARRETT L. COLEMAN, M.D.
>
> Dated April 4, 1978."

On September 30, 1982, following the trial court's grant of plaintiff's motion for a new trial on the issue of damages only, defendant filed a motion for leave to file an affirmative defense alleging that the loan receipt agreement should not be treated as such, but as a covenant not to sue, and that the sum of $20,000 paid plaintiff thereunder constitutes a partial satisfaction of any judgment entered in favor of plaintiff and against defendant.

On May 12, 1987, following the third trial of this cause on damages only, the jury entered a verdict in the amount of $496,327.80. On May 20, 1987, a stipulation was filed reciting that plaintiff and defendant agreed that judgment be entered in the amount of $100,000, the limit of insurance coverage for defendant, who had been

discharged in bankruptcy. On that same date, the trial court entered judgment on the jury's verdict in the amount of $100,000.

On June 4, 1987, defendant filed his affirmative defense alleging that the purported loan was in fact a partial payment and satisfaction of the judgment and that defendant was entitled to a $20,000 setoff from the judgment entered against him. All parties to the loan receipt agreement filed pleadings urging the trial court to deny the affirmative defense and not allow a setoff.

On June 18, 1987, after hearing, the trial court entered a written order denying defendant's affirmative defense. The court held that the loan receipt agreement was valid and should not be allowed as a setoff from the judgment.

Subsequently, defendant filed a post-trial motion asking the trial court to set aside its order of June 18, 1987, find the loan receipt agreement invalid and allow defendant a setoff in the amount of the purported loan. Plaintiff also filed a motion asking the court to reconsider its order of June 18, 1987, find the loan receipt agreement invalid, but increase the judgment to $120,000 prior to allowing the $20,000 setoff.

Following hearing on these motions, on September 15, 1987, the trial court entered an order which recites in relevant part:

> "The Court feels that its previous Order relating to the validity of the Loan Receipt is correct. The Court does, however, feel that the appropriate, equitable approach to this situation would, and should, include the judgment against Barrett Coleman being increased to $120,000.00 and the allowance of the $20,000.00 Loan Receipt as a partial setoff of that $120,000.00 judgment."

The trial court so ordered.

■ On appeal, both parties assert that the trial court properly allowed the amount of the purported loan as a setoff from the judgment entered against defendant. Both parties agree and assert that the loan receipt agreement was invalid. The disagreement of the parties goes to whether the trial court erred in increasing the judgment from $100,000 to $120,000 prior to allowing the setoff. We find that the trial court erred in increasing the amount of the judgment and allowing a setoff because we find that the loan receipt agreement was valid.

■ Loan receipt agreements were first sanctioned by our supreme court in *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382. However, they are given effect only if entered into prior to judgment (*Kerns v. Engelke* (1979), 76 Ill.

2d 154, 170, 390 N.E.2d 859, 867), if disclosed to the court and parties prior to trial (*Reese*, 55 Ill. 2d at 364-65, 303 N.E.2d at 387), and only to the extent that the money advanced thereunder is to be repaid by plaintiff (*Schoonover v. International Harvester Co.* (1988), 171 Ill. App. 3d 882, 885, 525 N.E.2d 1041, 1043). Thus, if some amount of the loan is to be forgiven, that amount is treated as an ordinary, unconditional payment for a covenant not to sue and must be set off against any verdict as a partial satisfaction of judgment. *Schoonover*, 171 Ill. App. 3d at 885, 525 N.E.2d at 1043.

We find nothing about the loan receipt agreement to render it invalid. The entire amount of the loan is to be repaid, it was entered into prior to any trial of this cause, and it was disclosed to the court and parties prior to any trial of this cause.

■ In its initial order of June 18, 1987, the trial court found the loan receipt agreement to be valid. In its subsequent order of September 15, 1987, the trial court affirmed this finding. We think the trial court correctly so found. However, we find that the trial court abused its discretion in allowing the amount of the loan as a setoff in spite of its finding that the loan receipt agreement was valid. In doing so, the trial court invalidated the loan receipt agreement with no legal basis for doing so. We find this to be an abuse of the trial court's discretion. Further, the parties stipulated that judgment was to be entered in the amount of $100,000 and the original judgment entered by the trial court was in that amount. Any increase in that amount constitutes an abuse of discretion, especially in light of our holding that a setoff should not have been allowed. We therefore reverse the trial court's judgment invalidating the loan receipt agreement, increasing the judgment to $120,000 and allowing a setoff of $20,000.

Pursuant to the power granted us by Supreme Court Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)), we hereby enter judgment in favor of plaintiff, Anthony J. Greco, and against defendant, Barrett L. Coleman, M.D., in the amount of $100,000, with no allowance for a setoff.

■ Finally, we note that in the last sentence of his argument, plaintiff-appellee requests that this court order that post-judgment interest run from the date of the jury verdict rather than from the date of entry of judgment by the trial court. Plaintiff-appellee made a similar request before the trial court, which was denied after the filing of responsive pleadings and hearing. Plaintiff-appellee has filed no notice of appeal from the denial of its motion to add interest. There is no way for an appellee to appeal from an order of the trial court other than by cross-appeal. (*Bawden v. Furlong* (1958), 16 Ill. App. 2d 174, 185, 147 N.E.2d 889, 895.) The filing of a notice of cross-appeal

within the period set forth in Supreme Court Rule 303(a)(3) is mandatory and jurisdictional. (*In re Petition of Village of Kildeer to Annex Certain Property* (1987), 162 Ill. App. 3d 262, 280, 514 N.E.2d 1020, 1032.) Because plaintiff-appellee never filed a notice of cross-appeal, there is no cross-appeal pending before this court. In the absence of a cross-appeal, this court is not authorized to examine or decide an issue raised by appellee, but is confined to the issues raised by appellant. (*National Bank v. City of Lexington* (1985), 138 Ill. App. 3d 805, 809, 486 N.E.2d 967, 970.) Therefore we cannot, and will not, address this issue raised by plaintiff-appellee.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed as modified.

Affirmed as modified.

LEWIS and CALVO, JJ., concur.