Filed 6/24/10    NO. 4-09-0587

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| HOLTKAMP TRUCKING COMPANY, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Macon County |
| DAVID J. FLETCHER, M.D., L.L.C., d/b/a | ) | No. 09MR300 |
| SAFEWORKS ILLINOIS, | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Albert G. Webber, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Holtkamp Trucking Company, brought this action against defendant, David J. Fletcher, M.D., L.L.C., d/b/a Safeworks Illinois, to compel defendant to comply with a subpoena issued by the Illinois Workers' Compensation Commission (Commission). See 820 ILCS 305/16 (West 2008). The subpoena commanded defendant to mail to plaintiff's attorney the medical records of one of plaintiff's employees, Jimmy Pease, who was claiming workers' compensation. The circuit court found that by disobeying this administrative subpoena, defendant was in direct civil contempt, and the court ordered defendant to purge itself of the contempt by providing plaintiff a copy of the requested medical records.

Even though the circuit court enforced the subpoena, plaintiff appeals for two reasons: (1) the court ordered plaintiff to pay 15 cents for each page of the photocopied medical records, and (2) the court denied plaintiff's request to assess costs, attorney fees, and a fine against defendant, its attorney, or both of them.

As both parties agree, the requirement that plaintiff pay 15 cents per page has no basis in law; therefore, we reverse the portion of the circuit court's judgment imposing that requirement. Otherwise, we affirm the judgment because we find no contumacious behavior of defendant toward the circuit court and, hence, no justification for sanctions.

## I. BACKGROUND

In the course of his employment by plaintiff, Pease sustained an injury. He filed a claim for workers' compensation and obtained medical treatment from defendant.

Because of Pease's claim for workers' compensation, plaintiff wished to review his medical records. To that end, plaintiff's attorney, Melinda M. Rowe, obtained a subpoena from the Commission and on March 31, 2009, mailed the subpoena to defendant. The subpoena commanded defendant, by April 20, 2009, to mail to Rowe all records of the examination and treatment of Pease (excluding records pertaining to alcohol or drug abuse, sexually transmitted diseases, or mental-health problems). In a cover letter, Rowe explained that pursuant to Clayton v. Ingalls Memorial Hospital, 311 Ill. App. 3d 135, 724 N.E.2d 222 (2000), she was enclosing a check in the amount of $20 for "subpoena fees." See 705 ILCS 35/4.3(a) (West 2008) ("Every witness attending in any county upon trials in the courts shall be entitled to receive the sum of $20 for each day's attendance and $0.20 per mile each way for necessary travel"). As if to forestall an objection by defendant that $20 was not enough, Rowe asserted that in Clayton, the appellate court held that "the subpoenaed party [was] not entitled to per-page copy fees, retrieval fees, or any other claimed expenses." (Emphasis in original.)

On April 8, 2009, defendant's attorney, Eugene F. Keefe, responded to Rowe with an e-mail disagreeing with her interpretation of Clayton. Keefe disputed Rowe's

assertion that the law required defendant to copy and mail the medical records to her in return for $20. He did not understand Clayton as "defin[ing] the costs payable for copying medical or other records."

One way of saving defendant the expense of copying the medical records might have been to allow plaintiff or a third party to do the copying when defendant made the records available for inspection. Keefe declared, however, that defendant "would not allow [its] original records to be copied as part of such inspection," and he asserted that the law did not require defendant to allow such copying. Rather, Keefe interpreted Clayton and section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 2008)) as "requir[ing] the keeper of medical records for [defendant] to appear at a hearing and present original records for inspection by the [a]rbitrator," nothing more. Nevertheless, Keefe offered a compromise: he said that defendant would be "happy to comply with any medical records request and copy and mail records based upon the schedule posted by the Illinois State Comptroller" on the Internet, and Keefe gave a Web address.

Rather than accept that offer, plaintiff decided to seek enforcement of the subpoena. Section 7030.50(d)(1) of the Commission's rules provided that if a person or organization failed to comply with a subpoena issued by the Commission, the party wishing to obtain enforcement of the subpoena should prepare an application to the circuit court for enforcement of the subpoena, pursuant to section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 2008)). 50 Ill. Adm. Code §7030.50(d)(1) (1996). Before filing the application in the circuit court, however, the party had to serve a copy of the application on the opposing party and present the application to the arbitrator assigned to hear the claim. 50 Ill. Adm. Code §7030.50(d)(1) (1996). The arbitrator then would hold a hearing

to "determine if the subpoena requested relevant information[] and was properly issued and served and if the application [was] proper in form." 50 Ill. Adm. Code §7030.50(d)(2) (1996). If the arbitrator so found, the arbitrator would sign the application, and the party then could file and prosecute the application in circuit court. 50 Ill. Adm. Code §7030.50(d)(2) (1996).

On April 27, 2009, after a hearing, the arbitrator in this case, Neva Neal, signed an order allowing plaintiff to file an action in circuit court for enforcement of the Commission's subpoena. Accordingly, on April 29, 2009, plaintiff filed its application in circuit court. The application requested the following relief: (1) enforcement of the subpoena, (2) a finding of civil contempt against defendant, (3) attorney fees and costs, (4) a fine against defendant and Keefe for each day they had willfully refused to comply with the subpoena, and (5) an order for defendant's commitment (evidently meaning Fletcher's commitment) until defendant complied with the subpoena by hand-delivery of the medical records.

On June 1, 2009, defendant challenged the application by filing a motion for summary judgment. In its motion, defendant argued that despite plaintiff's failure to pay mileage, defendant had fully complied with Clayton and section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 2008)) by appearing at the administrative hearing on April 27, 2009, with the original medical records in hand. Defendant insisted that no law entitled plaintiff to "free photocopies" in lieu of inspection of the original records and that, in fact, the Workers' Compensation Act and the administrative rules governing practice before the Commission predated the invention of photocopying machines.

On June 17, 2009, plaintiff filed a cross-motion for summary judgment, maintaining, to the contrary, that Clayton and sections 8.2(d) and 16 of the Workers' Compensation Act (820 ILCS 305/8.2(d), 16 (West 2008)) required a medical provider to provide a copy of the medical records to the subpoenaing party upon receipt of the statutory witness fee of $20. See 705 ILCS 35/4.3(a) (West 2008). Plaintiff argued that if, in response to a subpoena issued by the Commission, the medical provider did not have to provide a copy of the medical records to the employer but, instead, only had to bring the original records to the arbitrator, the system of workers' compensation would collapse under the weight of unresolved claims. Because employers would possess no documentary evidence on which to base a settlement, all of the 70,000 workers' compensation claims that were filed each year would have to be tried by the Commission--an impossible task for the 32 arbitrators in Illinois.

After hearing these arguments, the circuit court agreed with plaintiff that appearing in the subpoena hearing with the original medical records instead of providing a copy of them to the employer, as the subpoena commanded, failed to satisfy the Workers' Compensation Act. The court further held that paying mileage was unnecessary to the enforcement of a subpoena duces tecum. Therefore, the court found defendant to be in direct civil contempt of court for willfully and contumaciously refusing to make a copy of the medical records and mail the copy to plaintiff, as the administrative subpoena required. Because defendant had acted, however, in good-faith reliance on the advice of its attorney (Keefe), the court declined plaintiff's request to order defendant to pay attorney fees, a fine, and costs. Instead, the court required defendant to purge itself of the contempt by delivering a copy of the medical records to plaintiff within seven days and without charging

plaintiff any hourly rate or handling fee. The court allowed defendant, however, to give plaintiff an invoice charging 15 cents a page, and plaintiff was to pay that invoice within seven days after receiving a photocopy of the medical records.

In its notice of appeal, plaintiff disagrees with the circuit court's requirement that plaintiff pay defendant 15 cents a page for the photocopied medical records. Plaintiff also disagrees with the court's denial of costs and attorney fees and the court's refusal to impose a fine on defendant and Keefe. Otherwise, plaintiff agrees with the circuit court's judgment.

## II. ANALYSIS

### A. The Scope of This Appeal

As we have noted, plaintiff appeals from some, but not all, of the circuit court's judgment. Plaintiff agrees with the portion of the judgment finding defendant to be in direct civil contempt of court and requiring defendant to purge itself by providing plaintiff a copy of Pease's medical records, but plaintiff disagrees with the portion of the judgment requiring plaintiff to pay defendant 15 cents a page and declining to assess costs, attorney fees, and a fine against defendant.

In its brief, defendant challenges the portion of the circuit court's judgment finding defendant to be in direct civil contempt of court; but, unlike plaintiff, defendant has not appealed. Consequently, plaintiff argues that defendant can address only the issues that plaintiff raises on appeal; defendant cannot challenge any other part of the judgment, because defendant did not appeal from the judgment.

In support of its argument that defendant is limited, on appeal, to the issues that plaintiff raises, plaintiff cites our decision in National Bank of Bloomington v. City of

Lexington, 138 Ill. App. 3d 805, 809, 486 N.E.2d 967, 970 (1985). In National Bank, 138 Ill. App. 3d at 809, 486 N.E.2d at 970, we held: "The rule is uniformly interpreted by our reviewing courts to require that in the absence of a cross-appeal, the reviewing court is not authorized to examine or modify a portion of the order of the trial court. [Citation.] In such circumstances the reviewing court is confined to the errors raised by the appellant. [Citation.]" Also, plaintiff cites two other decisions to the same effect. In Greco v. Coleman, 176 Ill. App. 3d 394, 401, 531 N.E.2d 46, 51 (1988), the Fifth District held: "In the absence of a cross-appeal, this court is not authorized to examine or decide an issue raised by [the] appellee, but is confined to the issues raised by [the] appellant." Similarly, in Phelps v. Seeley, 3 Ill. 2d 210, 218, 119 N.E.2d 923, 927 (1954), the supreme court held: "[I]n the absence of a cross[-]appeal[,] [a] matter [raised by the appellee] is not open to consideration." Thus, plaintiff insists that because defendant filed no cross-appeal, defendant is confined to the issues that plaintiff raises in this appeal and those issues do not include the propriety of the finding of direct civil contempt or the enforcement of the Commission's subpoena.

In opposition to plaintiff's argument that defendant is confined to the issues that plaintiff raises, defendant observes that in Fillpot v. Midway Airlines, Inc., 261 Ill. App. 3d 237, 241, 633 N.E.2d 237, 240 (1994), we overruled National Bank, on which plaintiff's argument heavily relies. Defendant interprets Fillpot as allowing defendant to challenge the finding of direct civil contempt even though defendant never filed a cross-appeal. To evaluate this counterargument by defendant, we will take a careful look at the facts and holdings in National Bank and Fillpot.

In National Bank, 138 Ill. App. 3d at 806, 486 N.E.2d at 968, the

administrator of the estate of John Homan sued the city of Lexington for Homan's wrongful death. The plaintiff's theory was that the city had engaged in an ultrahazardous activity by hiring an independent contractor, Charles Lowery, to cut down a tree on city property. National Bank, 138 Ill. App. 3d at 806, 486 N.E.2d at 968. Homan was at the site of the tree-cutting in order to gather firewood, and the trunk of the tree fell on him, killing him. National Bank, 138 Ill. App. 3d at 807, 486 N.E.2d at 968. Although the trial court agreed with the plaintiff that the felling of the tree was an ultrahazardous activity (National Bank, 138 Ill. App. 3d at 806, 486 N.E.2d at 968), the court granted the defendant's motion for summary judgment because by gathering the cut branches for firewood, Homan had participated in the ultrahazardous activity and therefore was barred from recovery (National Bank, 138 Ill. App. 3d at 807, 486 N.E.2d at 968). The plaintiff appealed, and we reversed the summary judgment because we found a factual dispute as to where Homan was standing and what he was doing when the tree trunk fell on him. Consequently, it was not inevitable that a reasonable trier of fact would draw the inference that Homan was participating in the tree-felling at the moment of his death. National Bank, 138 Ill. App. 3d at 808-09, 486 N.E.2d at 969.

The defendant in National Bank argued that even if we found a question of fact as to whether Homan was participating in the tree-felling, we nevertheless should affirm the summary judgment in the defendant's favor because the trial court erred in its conclusion that the cutting of the tree trunk was an ultrahazardous activity. National Bank, 138 Ill. App. 3d at 809, 486 N.E.2d at 969. In other words, the defendant agreed (obviously) with the summary judgment in the defendant's favor, but the defendant disagreed with a legal conclusion the trial court had drawn in the plaintiff's favor--namely,

that the tree-cutting was an ultrahazardous activity--and if one took away that erroneous conclusion, the case for affirmance became even stronger, so the defendant argued. We held, however, that because the defendant never filed a cross-appeal, we could not consider the question of whether the tree-cutting was an ultrahazardous activity but, instead, we were confined to the issues that the plaintiff raised. National Bank, 138 Ill. App. 3d at 809, 486 N.E.2d at 970.

Nevertheless, the conclusion that defendant was engaged in an ultrahazardous activity was merely part of the trial court's rationale in National Bank, and judgments are appealed, not the trial court's reasons. If, in trial court, a party wins a judgment that is entirely favorable to that party but the party disagrees with the trial court's rationale for the judgment, it makes no sense to require the party to appeal from the completely favorable judgment on pain of losing the right to challenge the trial court's rationale should the opponent appeal. After all, we can affirm a judgment for any reason the record supports, regardless of whether the trial court relied on that reason. Material Service Corp. v. Department of Revenue, 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12 (1983). In Fillpot, we recognized this fallacy of National Bank.

The plaintiff in Fillpot slipped and fell on a natural accumulation of ice on the tarmac of an airport after she got off the defendant's airplane. Fillpot, 261 Ill. App. 3d at 238, 633 N.E.2d at 238. She sued the defendant for her personal injuries, alleging that the defendant, as a common carrier, owed her the highest duty of care and that the defendant had breached that duty by failing to protect her from, or warn her against, the danger of the ice. Fillpot, 261 Ill. App. 3d at 238, 633 N.E.2d at 238. The trial court agreed with the plaintiff that the defendant, as a common carrier, owed her the highest duty of care while

she was getting off the plane, but because the plaintiff fell on a natural, rather than an unnatural, accumulation of ice, the court held that the defendant had not breached its duty; therefore, the court granted the defendant's motion for summary judgment. Fillpot, 261 Ill. App. 3d at 238, 633 N.E.2d at 238.

The plaintiff appealed, and on appeal, the defendant challenged the trial court's finding that the plaintiff and defendant were in a passenger-carrier relationship at the time the plaintiff fell. Fillpot, 261 Ill. App. 3d at 240, 633 N.E.2d at 239. According to the defendant, when the plaintiff slipped on the icy tarmac and fell, she had exited the plane and thereby had reverted to the status of a pedestrian. Fillpot, 261 Ill. App. 3d at 242, 633 N.E.2d at 241. On the authority of National Bank, the plaintiff moved to strike the portion of the defendant's brief in which the defendant made that argument, because the defendant had filed no cross-appeal. Fillpot, 261 Ill. App. 3d at 240, 633 N.E.2d at 239. We denied the plaintiff's motion to strike, for we concluded, on the authority of Landmarks Preservation Council of Illinois v. City of Chicago, 125 Ill. 2d 164, 174, 531 N.E.2d 9, 13 (1988), that National Bank was incorrect and that the defendant could question the carrier-passenger relationship without filing a cross-appeal. Fillpot, 261 Ill. App. 3d at 241, 633 N.E.2d at 240. We overruled National Bank as irreconcilable with Landmarks, because in Landmarks, 125 Ill. 2d at 174, 531 N.E.2d at 13, the supreme court held that even though the trial court made findings that were adverse to the appellee, the appellee did not have to cross-appeal unless the judgment was, at least in part, adverse to the appellee. Fillpot, 261 Ill. App. 3d at 240, 633 N.E.2d at 240. Since the summary judgment in the defendant's favor was entirely favorable to the defendant, the defendant did not have to cross-appeal as a condition of challenging the trial court's finding of a carrier-passenger relationship

after the plaintiff exited the airplane. <u>Fillpot</u>, 261 Ill. App. 3d at 240-41, 633 N.E.2d at 240.

In the present case, defendant denies that the trial court's judgment is in any way adverse to defendant, and therefore defendant argues it should not be confined to the issues that plaintiff raises in this appeal. Defendant points out that the record contains no ruling on the cross-motions for summary judgment, and defendant observes that the court made decisions unfavorable to plaintiff, namely, the denial of costs and attorney fees and the refusal to impose a fine.

It is true that plaintiff did not get everything it requested, but by the same token, the judgment was at least partly unfavorable to defendant. Plaintiff brought an action against defendant to enforce the Commission's subpoena, and the circuit court enforced the subpoena. Also, the court found defendant to be in contempt.

Because the circuit court's judgment was at least partly unfavorable to defendant and defendant has filed no cross-appeal, defendant is confined to the issues that plaintiff raises. See <u>Phelps</u>, 3 Ill. 2d at 218, 119 N.E.2d at 927; <u>Fillpot</u>, 261 Ill. App. 3d at 240, 633 N.E.2d at 239. Plaintiff does not challenge the finding that defendant was in direct civil contempt of court or the order that defendant purge itself of the contempt by copying the medical records and delivering the copy to plaintiff. Therefore, the finding of contempt and the corresponding purge order are indelible features of the landscape in this appeal. Absent a cross-appeal by defendant, we will not consider any of defendant's arguments against the finding of direct civil contempt or the court's enforcement of the subpoena.

B. Attorney Fees, Costs, and a Fine

As we have explained, we lack authority to reverse the finding of contempt,

- 11 -

because (1) defendant did not appeal and (2) plaintiff does not challenge the finding of contempt. Plaintiff does challenge, however, the circuit court's denial of its request for costs, attorney fees, and the imposition of a fine against defendant, Keefe, or both of them. To address those challenges by plaintiff, we must examine the record to see if it reveals any basis for awarding costs and attorney fees and for imposing a fine. By examining the record to see if it contains any basis for sanctions, we necessarily will subject the finding of contempt to critical scrutiny, despite our jurisdictional inability to actually overturn that finding.

Even though a court finds a party to be in contempt, the court does not have to impose a sanction. See People v. Bailey, 235 Ill. App. 3d 1, 4, 600 N.E.2d 1267, 1269 (1992); In re Marriage of Elies, 248 Ill. App. 3d 1052, 1058, 618 N.E.2d 934, 939 (1993). The types of sanctions and whether to impose any sanction at all lie within the sound discretion of the court. Multiut Corp. v. Draiman, 359 Ill. App. 3d 527, 541, 834 N.E.2d 43, 54 (2005). There are degrees of contumacious behavior, and a court could reasonably make the sanctions depend on how egregious or persistent the contumacious behavior is. On the record before us, we find no evidence that defendant or its attorney has ever behaved contumaciously toward the circuit court in this case, and therefore we find no abuse of discretion in the court's denial of plaintiff's request for sanctions in the form of costs, attorney fees, and a fine.

Plaintiff seems to assume that section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 2008)) equates contumacious behavior toward the Commission with contumacious behavior toward the circuit court. That is a misinterpretation of the statute. The relevant paragraph of section 16 reads as follows:

"The Commission, *** any member thereof, or any [a]rbitrator designated by the Commission shall have the power to administer oaths[;] [to] subpoena and examine witnesses; to issue subpoenas duces tecum[] requiring the production of such books, papers, records[,] and documents as may be evidence of any matter under inquiry[;] and to examine and inspect the same and such places or premises as may relate to the question in dispute.  The Commission, *** any member thereof, or any [a]rbitrator designated by the Commission, shall[,] on written request of either party to the dispute, issue subpoenas for the attendance of such witnesses and production of such books, papers, records[,] and documents as shall be designated in the applications, and the parties applying for such subpoena shall advance the officer and witness fees provided for in civil actions pending in circuit courts of this [s]tate, except as otherwise provided by [s]ection 20 of this Act [(820 ILCS 305/20 (West 2008))].  Service of such subpoena shall be made by any sheriff or other person.  In case any person refuses to comply with an order of the Commission or subpoenas issued by it[,] *** any member thereof, or any [a]rbitrator designated by the Commission or to permit an inspection of places or premises, or to produce any books, papers, records or documents, or [if] any witness refuses to

testify to any matters regarding which he or she may be lawfully interrogated, the [c]ircuit [c]ourt of the county in which the hearing or matter is pending, on application of any member of the Commission or any [a]rbitrator designated by the Commission, shall compel obedience by attachment proceedings, as for contempt, as in a case of disobedience of the requirements of a subpoena from such court on a refusal to testify therein."  820 ILCS 305/16 (West 2008).

This statute does not say that disobeying a subpoena issued by the Commission is contempt of court.  The statute does not require the reader to pretend that the court issued an order and that someone disobeyed it.  There is no such thing as contempt of Commission.  Instead of treating the Commission as if it were a court, the statute says that if a person refuses to comply with a subpoena issued by the Commission, the circuit court, on application of a member of the Commission or an arbitrator, "shall compel obedience by attachment proceedings, as [the court would do] for contempt, as in a case of disobedience of the requirements of a subpoena from such court on a refusal to testify therein."  820 ILCS 305/16 (West 2008).  The "as for" and "as in" constructions signify that the court may use a tool from the law of contempt, i.e., attachment. The statute does not say the court is to hold the person in contempt merely because the person disobeyed a subpoena issued by an administrative agency.  Instead, the statute says the court shall order the arrest of the person, if necessary, "as in" a case of contempt of court. There is a difference between convening a contempt proceeding and following a procedure "as in" a contempt proceeding.  Suppose, for example, that A tells B: "Throw this apple into

- 14 -

that basket <u>as</u> <u>in</u> a game of basketball." A is not telling B to play a game of basketball. Instead, A is telling B to do something that one would do in a game of basketball, namely, throwing an object into a basket. Similarly, section 16 does not direct the court to initiate contempt proceedings because a person disobeyed a subpoena issued by the Commission (although contempt proceedings could become appropriate if the person subsequently disobeyed the court's order to comply with the Commission's subpoena). Rather, section 16 directs the court to do something that a court would do in contempt proceedings: compel obedience to the Commission's subpoena by a writ of attachment.

An attachment is merely an arrest and does not imply a finding of contempt. <u>Ex Parte Mason</u>, 16 Mo. App. 41, 46 (1884). It is simply a means of bringing a person before the court so that the person can show cause, if any, why the subpoena issued by the Commission should not be enforced. See <u>Ex parte Petrie</u>, 38 Ill. 498, 501-02 (1865). In the context of contempt proceedings, attachment usually is a method of last resort. Typically, it is only after a person fails to respond to a notice to show cause that the court issues a writ of attachment--and then the attachment is not punishment (noncompliance with a notice to show cause is not contempt of court, because the notice is not a court order), but, rather, it is merely a necessary method to bring a person before the court so that the person will have an opportunity to be heard. <u>Petrie</u>, 38 Ill. at 501-02; <u>First Midwest Bank/Danville v. Hoagland</u>, 244 Ill. App. 3d 596, 608, 613 N.E.2d 277, 286 (1993); 5 Nichols, Illinois Civil Practice §91.16, at 570 (2004). (We say "typically" because there might be rare exceptions, such as when the person is about to abscond. <u>Mason</u>, 16 Mo. App. at 45-46.) Therefore, it is fairly implied in section 6 that before the court orders the attachment of the defendant, the defendant must have disregarded a notice to appear in court at a designated time to

respond to the application for enforcement of the Commission's subpoena.

In the present case, defendant complied with plaintiff's notice to appear in circuit court. Further, we find no evidence in the record that defendant disobeyed any order by the court or that defendant was in any way contumacious or disrespectful toward the court. Consequently, we find no abuse of discretion in the court's denial of plaintiff's request for costs and attorney fees or in its refusal to impose a fine.

The dissent maintains, to the contrary, that defendant should have been sanctioned for three reasons. First, the dissent insists that the circuit court was correct in finding defendant to be in direct civil contempt. Slip op. at 25. That is not for us to say. As we have explained, we lack subject-matter jurisdiction to review the finding of contempt, because defendant has not appealed from that finding. Therefore, the finding stands, regardless of whether it is incorrect. But a finding of contempt does not automatically require sanctions.

Second, the dissent argues that "defendant continues to be in direct contempt because he admitted at oral argument he has not moved for a stay of [the circuit court's] order nor has he complied with that order." Slip op. at 25. Then, plaintiff may file in circuit court a notice to show cause, and defendant may appear in circuit court and show cause, if any, why defendant should not be found to be in contempt. The dissent is skipping over those essential steps of due process. See City of Quincy v. Weinberg, 363 Ill. App. 3d 654, 664-65, 844 N.E.2d 59, 68-69 (2006).

Third, the dissent contends the circuit court was correct in finding that defendant "did not comply with the relevant provisions of the Workers' Compensation Act and rules governing practice before the Commission." Slip op. at 25. More precisely, the

issue before us is whether a particular subpoena that the Commission issued on March 31, 2009, in case No. 09-WC-9590 is legally enforceable--not whether defendant followed the Act and the Commission's rules in general. We must keep in mind that this is an action to enforce that subpoena and, hence, the only question before us is whether the subpoena is lawful. See 820 ILCS 305/16 (West 2008).

The subpoena commanded defendant to mail medical records to plaintiff's attorney. The subpoena might just as well have commanded defendant to mail a stethoscope to plaintiff's attorney, because the medical records were defendant's property, the same as the stethoscope. See Young v. Murphy, 90 F.3d 1225, 1236 (7th Cir. 1996); Clouser v. Johns Manville Corp., 48 Pa. D. & C. 3d 667, 668 (1988); In re Culbertson's Will, 57 Misc. 2d 391, 392-93, 292 N.Y.S.2d 806, 807 (1968); McGarry v. J.A. Mercier Co., 272 Mich. 501, 503, 262 N.W. 296, 297 (1935). The Commission cannot confiscate defendant's property by commanding defendant to mail it to plaintiff's attorney, as the Commission did in its subpoena in this case. Even if the subpoena should be interpreted as commanding defendant to mail a copy of the medical records rather than the original records, the paper and ink of the photocopies would belong to defendant, and it would be defendant's money that paid for the photocopying machine, electricity, and clerical labor. Regardless of whether the medical records are original or a copy, they are defendant's property, and the subpoena purports to confiscate them.

The dissent seems to interpret section 8(a) of the Act (820 ILCS 305/8(a) (West 2008)) as giving the Commission this confiscatory power. Slip op. at 26-27. Admittedly, section 8(a) says: "Every *** physician *** rendering treatment *** shall upon written request furnish full and complete reports thereof to, and permit their records to be

copied by, the employer ***." 820 ILCS 305/8(a) (West 2008). "Furnishing reports," however, means furnishing them for inspection (see 820 ILCS 305/16 (West 2008); 50 Ill. Adm. Code §7030.50(b) (1996)), not giving them away. If section 8(a) meant that a physician had to give away medical records, the requirement of "permitting records to be copied" would be superfluous--and we strive to interpret statutes so that no phrase is superfluous (Yang v. City of Chicago, 195 Ill. 2d 96, 106, 745 N.E.2d 541, 546 (2001)). Permitting the records to be copied implies that the physician retains ownership of the records and also that someone other than the physician is responsible for doing the copying.

The subpoena in this case, however, says nothing about arranging to have the medical records copied, and it says nothing about plaintiff's paying for the copying; it merely says to mail them to plaintiff's attorney. It is true that in his e-mail to Rowe, Keefe announced that defendant would not allow its records to be copied and that the law did not require defendant to do so. In this absolute assertion, Keefe was mistaken. But, again, this is an action to enforce a particular subpoena, and we are scrutinizing the legal enforceability of that subpoena, not the correctness of Keefe's views. We cannot reasonably hold that defendant and Keefe should be sanctioned unless we can cite statutory law that (1) empowers the Commission to command a physician to mail medical records to anyone and (2) empowers a court to sanction a physician for disobeying such a command by the Commission (as opposed to disobeying a court order). We are aware of no such statute.

It is true, as the dissent points out, that section 8-2001(g) of the Code of Civil Procedure (Code) (735 ILCS 5/8-2001(g) (West 2008)) makes a doctor liable for reasonable attorney fees and expenses if the doctor refuses to make medical records available for copying. Slip op. at 30. Section 8-2001 is a promising statute; it might offer a way of

preventing the sort of impasse that we encounter in this appeal. Section 8-2001(g) is inapplicable to the present case, however, for two reasons. First, section 8-2001(c) (735 ILCS 5/8-2001(c) (West 2008)) requires a physician or other "health care practitioner" to permit the copying of a patient's medical records only "upon the request of any patient who has been treated by the health care practitioner, or any person, entity, or organization presenting a valid authorization for the release of records signed by the patient or the patient's legally authorized representative." In other words, there is a condition precedent to the doctor's statutory duty to permit the copying of medical records, namely, (1) a request by the patient, in writing (735 ILCS 5/8-2001(d) (West 2008)); or (2) a written request by a person or entity possessing an authorization signed by the patient or the patient's representative. In the present case, that condition precedent appears to be unfulfilled. In fact, Rowe stated in her letter to defendant: "Please be advised that, as this is a workers' compensation Subpoena, HIPPA [sic] privacy regulations requiring a signed release by the patient do not apply. See 45 CFR 164.512(e)(ii) and 45 CFR 164.512(l)." (Emphasis in original.) While it is true that federal privacy regulations make an exception for workers' compensation, section 8-2001 of the Code makes no such exception, and the condition precedent in section 8-2001(c) of the Code (735 ILCS 5/8-2001(c) (West 2008)) must be satisfied. States are free to adopt more stringent regulations than the Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 U.S.C. §1320d et seq. (2006)). 45 C.F.R. §160.203(b) (2009).

Second, even if we disregarded the nonfulfillment of the condition precedent in section 8-2001(c) of the Code (735 ILCS 5/8-2001(c) (West 2008)), plaintiff would not be entitled to reasonable attorney fees and expenses under section 8-2001(g) (735 ILCS

5/8-2001(g) (West 2008)), because plaintiff announced to defendant, ahead of time, that plaintiff would not pay a per-page copying fee. According to section 8-2001(d) (735 ILCS 5/8-2001(d) (West 2008)), the person requesting copies of the medical records shall pay a per-page fee "at the time of such copying" (and we note that it is substantially higher than 15 cents a page). The person also shall pay a "handling charge" of up to $20 as well as "the actual postage or shipping charge." 735 ILCS 5/8-2001(d) (West 2008). Rowe declared to defendant that plaintiff would pay only the witness fee of $20 and that plaintiff refused to pay any "per-page copy fees, retrieval fees, or any other claimed expenses" (to quote her letter). A reasonable reader would have to interpret the attorney fees and expenses in section 8-2001(g) (735 ILCS 5/8-2001(g) (West 2008)) as being subject to plaintiff's willingness to meets its own statutory obligations.

C. No Authority To Order Anyone To Make Photocopies and Mail Them

In reliance on Clayton, plaintiff challenges the portion of the circuit court's judgment requiring plaintiff to pay defendant 15 cents for each page of photocopied medical records. In Clayton, 311 Ill. App. 3d at 138, 724 N.E.2d at 225, the First District held that section 4.3 of the Circuit Courts Act (705 ILCS 35/4.3 (West 1996)), which section 16 of the Workers' Compensation Act (820 ILCS 305/16 (West 1996)) impliedly referenced, "[did] not require the subpoenaing party to pay any per-page copy fees" to obtain documents pursuant to a subpoena duces tecum issued by the Commission. Defendant concedes that the charge of 15 cents per page has no basis in law.

We agree with defendant's concession. This is not to say that persons subpoenaed by the Commission must copy and mail documents for free. On the contrary, absent compliance with sections 8-2001(c) and (d) of the Code (735 ILCS 5/8-2001(c), (d)

(West 2008)), we are convinced that the circuit court lacked authority to order defendant to make photocopies and sell them to plaintiff at any price. The court had authority to enforce the Commission's subpoena insomuch as the subpoena was lawful, but the subpoena in this case was unlawful because it required defendant to do that which the Commission lacked authority to order anyone to do: photocopy documents and mail them. (If the conditions precedent in section 8-2001 were fulfilled, a physician would have to make the medical records available for copying upon written request, and a subpoena by the Commission would be unnecessary. If the physician refused, the requesting party could bring an action pursuant to section 8-2001 and recover reasonable attorney fees and expenses.)

Section 16 (820 ILCS 305/16 (West 2008)) authorizes the Commission to "issue subpoenas duces tecum requiring the production of such books, papers, records[,] and documents as may be evidence of any matter under inquiry and to examine and inspect the same," but it does not authorize the Commission to order anyone to photocopy, or create duplicates of, the records. A subpoena duces tecum is "'[a] writ or process of the same kind as the subpoena ad testificandum, including a clause requiring the witness to bring with him and produce to the court books, papers, etc., in his hands, tending to elucidate the matter in issue.'" (Emphasis added.) People ex rel. Metropolitan Casualty Insurance Co. of New York v. Calumet National Bank, 260 Ill. App. 603, 611 (1931), quoting 3 J. Bouvier, Bouvier's Law Dictionary 3165 (8th ed. 1914). In other words, a subpoena duces tecum is like a subpoena ad testificandum, which requires a witness to appear and testify, except that a subpoena duces tecum requires the witness to bring along existing documents in his or her possession. It does not require the witness to copy documents and

- 21 -

mail them.  Section 7030.50(b) of the Commission's rules conforms to the traditional understanding of the subpoena <u>duces</u> <u>tecum</u>:  "Unless otherwise agreed by the parties, witnesses or documents may only be subpoenaed to appear or be produced at the time and place set for hearing of the cause."  50 Ill. Adm. Code §7030.50(b) (1996).  In other words, the parties are free to agree to some alternative method of providing documents, such as photocopying them and mailing them in return for a fee, but absent such an agreement, the subpoena shall require the person to bring the documents to the hearing of the workers' compensation claim.

No doubt, most doctors would conclude that they have better things to do than sit in a workers' compensation hearing all day while the arbitrator and parties go through the original medical records page by page.  By the same token, most doctors probably would think they have better things to do than operate a photocopying center as a side business that does not even pay for itself.  Since settling a workers' compensation claim is virtually impossible without a copy of the medical records, one would expect that most employers would manage to reach an agreement with doctors to arrange for the duplication and mailing of medical records in return for a reasonable fee, that is, a fee over and above the standard witness fee of $20, which, one may reasonably assume, does not even come close to paying for the photocopying machine, copy paper, mailing container, postage, and employee operating the photocopying machine and mailing the records.  In cases such as this one, in which the employer and doctor do not reach an agreement, the default option is a subpoena <u>duces</u> <u>tecum</u>, a highly impractical option, it would seem.

We can see plaintiff's point that if subpoenas <u>duces</u> <u>tecum</u> were the norm in workers' compensation proceedings, the system would soon become dysfunctional under

the weight of unresolved claims. Perhaps the Commission should consider promulgating a rule whereby a subpoena issued by the Commission could offer an alternative to appearing at the hearing with the original records in hand. The alternative, for example, might be photocopying the records at a certain price per page, which the Commission could specify, and mailing the photocopied records by a certain date. <u>Cf.</u> Official Reports Advance Sheet No. 13 (July 1, 2009), R. 204(a)(4), eff. June 11, 2009 (production of documents in lieu of appearance of deponent). Or perhaps a simpler solution would be to require the employee to sign an authorization for his or her medical records to be released to the employer. Then the employer could avail itself of section 8-2001. We assume that, in practice, most medical providers do photocopy records for purposes of workers' compensation. While it is likely time for the rules of workers' compensation to correspond more closely to the modern practice of litigation, that is for the Commission to determine.

### III. CONCLUSION

For the foregoing reasons, we reverse the portion of the circuit court's judgment requiring plaintiff to pay 15 cents per page of photocopied medical records. Otherwise, we affirm the judgment.

Affirmed in part and reversed in part.

STEIGMANN, J., concurs.

MYERSCOUGH, P.J., dissents.

PRESIDING JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. It is time to put an end to this nonsense in workers' compensation cases.

Initially, the issues raised by defendant are encompassed by the judgment challenged by plaintiff. As plaintiff is appealing the trial court's denial of attorney fees and costs, as well as appropriateness of sanctions, this court should address defendant's direct civil contempt.

Defendant was found in direct contempt by the trial court. That court did not abuse its discretion because defendant failed to follow the trial court's order to deliver the medical records to plaintiff within the required time frame. Further, defendant continues to be in direct contempt because he admitted at oral argument he has not moved for a stay of that order nor has he complied with that order.

The trial court correctly found defendant did not comply with the relevant provisions of the Workers' Compensation Act and rules governing practice before the Commission.

> "3. This [c]ourt rules the attendance and presence of a
> representative and counsel for [d]efendant David J. Fletcher,
> M.D., LLC, who both appeared at a workers['] compensation
> hearing with original medical records for inspection by the
> Arbitrator in response to the [s]ubpoena duces tecum does not
> satisfy the relevant provisions of the Illinois Workers[']
> Compensation Act and Rules Governing Practice before the
> Commission."

- 24 -

First and foremost, the legislature has mandated that defendant upon written request shall furnish complete reports of treatment or services and permit his records to be copied by the employer, employee, any party to any proceeding for compensation before the Commission, or their attorneys.

> "Every hospital, physician, surgeon or other person rendering treatment or services in accordance with the provisions of this [s]ection shall upon written request furnish full and complete reports thereof to, and permit their records to be copied by, the employer, the employee or his dependents, as the case may be, or any other party to any proceeding for compensation before the Commission, or their attorneys." 820 ILCS 305/8(a) (West 2008).

In contrast to the statute, the Commission has promulgated a rule to the contrary, that unless the parties agree otherwise, witnesses may only be required to appear and documents produced at the time and place of hearing.

> "Unless otherwise agreed by the parties, witnesses or documents may only be subpoenaed to appear or be produced at the time and place set for hearing of the cause." 50 Ill. Adm. Code §7030.50(b) (1996).

This administrative regulation is in direct conflict with section 8(a) of the Workers' Compensation Act and is therefore invalid. The workers' compensation statute trumps the administrative regulation insofar as the regulation may conflict with the statute. "Whenever an administrative rule conflicts with a statute, the rule will be held invalid and

- 25 -

the statute followed."  Greaney v. Industrial Comm'n, 358 Ill. App. 3d 1002, 1026, 832 N.E.2d 331, 352 (2005), citing Montgomery Ward Life Insurance Co. v. Department of Local Government Affairs, 89 Ill. App. 3d 292, 302, 411 N.E.2d 973, 980 (1980).  Further, applying the statute as written increases the efficiency of the process in keeping with the purposes of the Act.

>"The Act is a humane law of a remedial nature, whose fundamental purpose is to protect employees by providing efficient remedies, and prompt and equitable compensation for their injuries.  [Citation.]  By its very nature, the Act mandates a duty of due diligence."  (Emphasis in original.)  Contreras v. Industrial Comm'n, 306 Ill. App. 3d 1071, 1076, 715 N.E.2d 701, 705 (1999).

Therefore, defendant should have produced the records for copying upon the written request.  Obviously, this would logically have to be done in a timely fashion prior to the hearing.  In this case, the letter request and accompanying subpoena were issued March 31, 2009, with a reply date of April 20, 2009.  Of note, the subpoena is actually a form issued by the Commission.  That form has two choices to pick from:

>"□  You must appear to testify before the Honorable _____ of the Commission at the address _____ on the date _____ at the time _____, and to bring the items with you.
>
>☒ Mail the items to the address 411 Hamilton Blvd, Suite 1[,] Peoria[,] IL 61602 by the date [April 20, 2009].  You do not need to appear at the Commission."

Clearly, the selection of the second option does not reflect any written agreement of the parties to produce the documents at that location or time.

Further, the Commission's subpoena rule is nonsensical. The rule places production of medical--indeed all relevant evidence--in the control of petitioners' attorneys. Additionally, if the medical records requested must be provided at the hearing, this would require respondents' attorneys to request a continuance or request that proofs be left open so respondents' attorneys could review the medical records, perhaps have a further examination of petitioners, perhaps settlement discussion, and hearing of respondents' evidence, time which will further complicate the arbitrator's recollection of petitioners' cases, time for petitioners' recovery, if any, and further payment of temporary total disability.

I do agree with the majority to the extent no specific authority then existed for ordering payment of copying costs under the workers' compensation statute because of the Clayton decision. However, I believe Clayton was wrongly decided insofar as it found the Code (735 ILCS 5/1-101 et seq. (West 1996)) inapplicable to the subpoena process under the Workers' Compensation Act. Indeed, the legislature amended the Code (735 ILCS 5/8-2001 (West Supp. 2001)) the year following the Clayton decision to explicitly allow facilities to be reimbursed for copying fees and costs incurred in providing medical documentation. Pub. Act 92-228, §5, eff. September 1, 2001 (2001 Ill. Legis. Serv. 2623, 2624 (West)). The legislative change brings into question the validity of the holding of Clayton and was meant to address the confiscatory issues which are criticized by the majority. Slip op. at 17-18.

Sanctions are clearly authorized under both the Worker's Compensation Act (by the arbitrator or commissioner) or by means of contempt in circuit court.

"The Commission is empowered to enforce its rules with appropriate sanctions when they have been violated. (See 50 Ill. Adm. Code §7030.70, at 5739 (1985).)" Jones v. Industrial Comm'n, 227 Ill. App. 3d 161, 166, 591 N.E.2d 33, 36 (1992).

Here, the defendant continued to remain in noncompliance with section 12 before the circuit court. While I agree with the majority that a body attachment is an option here, it is just not the only option. To subject the medical profession to arrest for untimely or incomplete records, production, or even noncompliance where a dispute over statutory language exists seems draconian.

Here, the administrative regulations have adopted the common-law rules of evidence and the Illinois evidence act (735 ILCS 5/8-101 through 8-2701 (West 2008) (article VIII of the Code of Civil Procedure) to the extent they do not conflict with the Workers' Compensation Act or the administrative regulations.

> "a) The Illinois common[-]law rules of evidence and the Illinois [e]vidence [a]ct (820 ILCS 305 [sic]) shall apply in all proceedings had before the Industrial Commission, either upon arbitration or review, except to the extent they conflict with the Workers' Compensation Act, the Workers' Occupational Diseases Act (820 ILCS 310), or the Rules Governing Practice Before the Industrial Commission." 50 Ill. Adm. Code §7030.70(a) as amended by 20 Ill. Reg. 4053, 4059, eff. February 15, 1996.

Nothing therein conflicts with section 8-2001(a) of the Code (pertaining to examination of

records).

> "(g) Failure to comply with the time limit requirement
> of this [s]ection shall subject the denying party to expenses and
> reasonable attorneys' fees incurred in connection with any
> court ordered enforcement of the provisions of this [s]ection."
> 735 ILCS 5/8-2001(g) (West 2008).

The majority finds the Commission subpoena unlawful because it is confiscatory of defendant's property. However, this subpoena is lawful and comports with the statutes and regulations. All subpoenas, whether issued by the Commission or a court, are to be accompanied by a $20 handling charge. See Solon v. Midwest Medical Records Ass'n, 236 Ill. 2d 433, 925 N.E.2d 1113 (2010) (interpreting sections 8-2001 and 8-2003 of the Code (735 ILCS 5/8-2001, 8-2003 (West 2004)). The statutes contemplate a later bill for copying expenses at the time of production.

> "The person *** requesting copies of records shall reimburse
> the facility or the health care practitioner at the time of such
> copying for all reasonable expenses, including the costs of
> independent copy service companies, incurred in connection
> with such copying ***." 735 ILCS 5/8-2001(d) (West 2008).

Because section 7050.5(b) of Title 50 of the Administrative Code is invalid, section 8-2001(d) of the Code (735 ILCS 5/8-2001(d) (West 2008)) applies and the statutory costs for copying should have been awarded as set forth therein.

Further, the rules of civil procedure apply as stated so long as they do not conflict with the Worker's Compensation Act. The provision for patient authorization in

the Code the majority references does so conflict. Moreover, the physician-patient privilege does not apply to these records since these records are exempted by virtue of the employee having filed his workers' compensation cause of action.

> "No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except *** (4) in all actions brought by or against the patient, his or her personal representative, a beneficiary under a policy of insurance, or the executor or administrator of his or her estate wherein the patient's physical or mental condition is an issue ***." 735 ILCS 5/8-802 (West 2008).

The majority concedes that HIPAA does not apply.

Clearly, defendant failed to timely comply since, as plaintiff stated at orals, the records were produced at the hearing but plaintiff was neither shown the records nor permitted to copy them. The best practice in the future would be for all parties to agree in advance to reasonable copying costs being charged by the medical provider. However, the Commission also needs to amend its standard regulations to so state. Many statutes require fees of witnesses to be the same as fees for witnesses before the circuit court (see, e.g., 225 ILCS 320/22 (West 2008) (Illinois Plumbing License Act provision relating to witnesses at hearings, subpoenas, and fees), 210 ILCS 125/17 (West 2008) (Swimming Facility Act provision providing for subpoenas and witness fees), 55 ILCS 5/3-14043 (West 2008) (Counties Code pertaining to officers and employees in Cook County providing for

subpoenas and witness fees)), yet the Workers' Compensation Act does not. The Commission needs to clearly establish specific appropriate fees for witnesses, production of medical records, and photocopies consistent with the workers' compensation statute and Code of Civil Procedure.

For these reasons, this matter should be remanded for the assessment of sanctions, including fees and costs.